(75 South. 920)

## GRASSELLI CHEMICAL CO. v. CITY ICE CO. (1 Div. 966.)

(Supreme Court of Alabama.   May 17, 1917.)

1. SALES ☞267—EXPRESS AND IMPLIED WARRANTIES.

An express warranty of quality in a sale supersedes and excludes all implied warranties thereof.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 760, 761.]

2. APPEAL AND ERROR ☞1040(6)—HARMLESS ERROR—RULINGS ON PLEADINGS.

Any error in overruling demurrers to pleas of implied warranty of quality is harmless; express warranties pleaded being proven.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4093, 4097.]

3. SALES ☞439 — WARRANTY OF QUALITY — SEVERAL SALES—PROOF OF BREACH.

Relative to damages for breach of warranty of quality of ammonia sold for ice machines, it is unnecessary to show which of the several shipments was defective, all being sold to be mixed, and known that one impure lot would make the whole impure, decreasing its value and producing the same damages as if all had been impure.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1258–1260.]

4. PLEADING ☞182—SPECIAL REPLICATIONS —FAILURE TO DENY—ADMISSIONS.

Where no issue is joined on the pleas, but special replications are filed, which are not supported by proof, such pleas are to be taken as confessed.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 387, 388.]

Appeal from Law and Equity Court, Mobile County; Saffold Berney, Judge.

Action by the Grasselli Chemical Company against the City Ice Company. From an adverse judgment, plaintiff appeals. Affirmed.

Suit by appellant, the Grasselli Chemical Company, against appellee, the City Ice Company of Mobile, to recover the price of certain shipments of anhydrous and aqua ammonia sold by plaintiff to the defendant. The complaint contained only the common counts.

The defendant interposed several special pleas. Pleas 3 and 5 set up an implied warranty that the ammonia was suitable for use in the defendant's ice plant, and al-

leged that it was impure and unfit for ice-making purposes, thereby causing defendant to suffer great loss because of the consequent decrease in the output of said ice machine, and further alleged that plaintiff well knew at the time of said sale that the defective ammonia would produce such loss and damage. It was shown that the ammonia was sold to defendant under several separate dates· from January 22, 1915, to June 7, 1915, and that, in effect, all the ammonia was defective. Pleas 3 and 5 were substantially the same, except that plea 5 charged that a material portion of the ammonia embraced in the original shipment and with which the machinery was originally charged was not reasonably suited for the purposes for which it was sold, that the impure ammonia necessarily spread throughout the entire charge in the machine, thus rendering the whole .charge—including that subsequently added—unfit for the required purposes, and greatly reducing the ordinary output of ice. Demurrers were interposed to pleas 3 and 5 on the ground that the pleas alleged no facts upon which a warranty that the ammonia sold was reasonably suited to the use and purposes for which it was bought is implied, and upon the further ground that the pleas show that the defendant bought from the plaintiff aqua ammonia and anhydrous ammonia, and alleged no facts showing that the ammonia sold was not merchantable aqua ammonia and anhydrous ammonia. The demurrers were overruled. Plea 6 was as follows:

"The defendant purchased of the plaintiff and the plaintiff sold to the defendant 19,622 pounds of aqua ammonia at the price of $1,079.21, and 1,227 pounds of anhydrous ammonia at .the price of $309.20, on, to wit,· January 22, 1915; and 2,049 pounds of anhydrous ammonia at the price of $516.35 on, to wit, February 11, 1915, and 3,114 pounds of aqua ammonia at the price of $186.84, and 816 pounds of anhydrous ammonia at the price of $228.48 on, to wit, May 5, 1915; and 1,589 pounds of aqua ammonia at the price of $95.34 on, to wit June 4, 1915; and 775 pounds of aqua ammonia at the price of $46.50 on, to wit, June 7, 1915. Plaintiff agreed to deliver the said goods at Mobile, Ala., for the prices above named, but by further agreement · between the parties, defendant paid freights thereon for transportation to Mobile aggregating $98.13 for which defendant is entitled to credit as a payment on account of the purchase price and leaving unpaid $2,363.79 of the aggregate of the several amounts agreed to be paid for said several purchases. The account or demand sued upon in this cause is for said purchases. Plaintiff expressly warranted all of said anhydrous ammonia to be perfectly pure and dry and all of said aqua ammonia to be absolutely pure 26 degree aqua ammonia. At the time of each of said sales and purchases, plaintiff was informed and well knew that all of said ammonia was being purchased for use by defendant in operating its ice manufacturing plant at Mobile, Ala., consisting of two ice-making machines; that a part of the said ammonia would be charged into one of said machines, and the remainder into the other of said machines; that if any material portion of the ammonia constituting a part of such a charge was impure, such impurities would be communicated to the entire charge of which it formed a part and render the same unsuited and unfit for ice-making purposes, and substantially destroy the value of all of the ammonia in the charge, and also cause further heavy damages because of the material and necessary decrease in the output of defendant's said machine and the sundry delays and expenses incident to attempting to operate such a machine with impure ammonia. Not knowing of the defective and impure condition of the said ammonia, and relying upon said warranty, defendant charged both of its said ice-making machines with the ammonia acquired by the aforesaid purchases made in January and February, 1915, and while the said machines thereafter failed to operate as they should, or to show or develop their usual capacity, defendant, still believing the said ammonia to be pure, and not to be defective, and attributing the trouble to other causes, made the other purchases above shown, and added the ammonia so purchased to the charges then in its machines. A material portion of the ammonia in each of said original charges in truth and in fact was impure and the said impurities were necessarily spread throughout the entire charge in each machine, thus rendering the entire charge, including the ammonia subsequently added, impure and substantially destroying the value of all of said ammonia and greatly reducing the output of defendant's ice-making machines below what such output would have been had said machines been supplied with reasonably pure ammonia. Defendant, without knowing of the said condition of said ammonia and that the same was causing the decrease in the output of its machines and other troubles which it was encountering, operated the said machines for a long period, to wit, four months, while charged with said impure ammonia, during all of which period its said operations were· much delayed, impeded, and made more expensive, and the output of its said machines much decreased, because of the said condition of said ammonia. By reason of the aforesaid condition of said ammonia, defendant lost the. difference between the actual value of said impure mixture and the amount which would have been the value of a like quantity of ammonia complying with said warranty, and was further damaged in a large sum because of the aforesaid decrease in the output of its machines, and the aforesaid delaying, impeding, and making more expensive of its said operations, all of which said loss and damage aggregates, to wit, $7,500, which the defendant hereby recoups against the demand of the plaintiff and claims judgment for the. excess."

Plea· 4 is, in substance, the same as plea 6, relying upon the express warranty except that plea 4 alleged, in substance and effect, that *all* of the ammonia, instead of only some *part* of the original charge of each machine, was affected.

The plaintiff without filing any general traverse or replication, filed the following special replications to pleas 3, 4, 5, and 6:

"For replication pleaded separately to the third and fifth pleas to the complaint the plaintiff says that the price of the ammonia mentioned in said count is only a part of the cause of action sued on. Plaintiff sold the defendant all of the ammonia mentioned in said plea by description only; it sold aqua ammonia mentioned as 26 degree aqua ammonia at 60 degrees Fahrenheit, and sold the. anhydrous ammonia as dry, anhydrous ammonia, and that said aqua ammonia was merchantable 26 degree aqua ammonia at 60 degrees Fahrenheit, and the said anhydrous ammonia was merchantable dry anhydrous ammonia. The ammonias were sold deliverable to the carrier at point of shipment.

"For replication pleaded separately to the fourth and sixth pleas, the plaintiff says that the price of the ammonia mentioned in said

plea is only a part of the cause of action sued on. The plaintiff sold the defendant all of the ammonia mentioned in said plea by description only; it sold the aqua ammonia mentioned as 26 degree aqua ammonia at 60 degrees Fahrenheit, and so warranted it, and sold the anhydrous ammonia mentioned in said plea as dry anhydrous ammonia, and so warranted it, and that it did not otherwise warrant any of said sales; that said aqua ammonia was merchantable 26 degree aqua ammonia at 60 degrees Fahrenheit, and that the said anhydrous ammonia was merchantable dry anhydrous ammonia. Ammonias were sold deliverable to the carrier at point of shipment."

Defendant's demurrer to these replications having been overruled, it then filed additional pleas 7, 8, 9, and 10. Plea 7 was substantially the same as plea 3, except that it alleged that a part of the account sued on was for said purchases. Plea 9 was substantially the same as plea 5, with the same exception as contained in plea 7. Plea 8 was substantially the same as plea 4, with the exception that it also alleged that a part of the account sued upon was for said purchases; and plea 10 was substantially the same as plea 6, with a like exception.

There were no demurrers to pleas 7, 8, 9, and 10, and no general traverse or replication but the plaintiff filed to pleas 7 and 9 the same replications it had filed to pleas 3 and 5, and filed to pleas 8 and 10 the same replications it had filed to pleas 4 and 5, except that the replications to pleas 7, 8, 9, and 10 do not allege "that the price of the ammonia mentioned in said count is only a *part* of the cause of action sued upon." Demurrers to these replications were overruled.

Plaintiff proved an account against defendant for $2,363.79, consisting of items recited in defendant's plea. The testimony for the plaintiff further tended to show that all of the anhydrous ammonia was expressly warranted to be perfectly pure and dry, and all of the aqua ammonia to be absolutely pure 26 degree aqua ammonia, and that the plaintiff knew that defendant was purchasing this ammonia to be used in charging its machine in the manufacture of ice. Evidence for plaintiff further showed that the ammonia was sold in New Orleans, delivered in Mobile, but did not prepay the freight; that defendant paid the freight, and that the sum of $98.13 was properly to be accredited to the account for freight so paid.

At the time of the purchase of the ammonia defendant owned an ice plant, consisting of 2 connecting machines, each with a rated capacity of 25 tons per day. Defendant's evidence further tended to show that these machines had just been overhauled and charged, and were both charged with the ammonia bought of plaintiff, as initial charges, and that the defendant operated said machines with said charge, and supplemented by additions of ammonia purchased from the plaintiff, one for about four months, and the other six.

Defendant's evidence further tended to show that the machines, instead of producing the rated capacity of 25 tons per day each, produced only 18 tons, or less. Defendant claimed that such failure was due to the defective character of the ammonias, while plaintiff claimed that it was due to defects in the machines. The evidence for defendant further tended to show that after operating the machines with these ammonias for the time above mentioned, the ammonia in question was taken out, and other ammonia put in the machines, and they immediately produced their rated capacity.

There was much evidence bearing upon the question as to whether defective ammonia or defective machinery caused the shortage in production. There was evidence furnishing data showing the loss suffered by defendant on account of the use of the ammonia claimed by it to be defective.

The issues were submitted to the jury, and a verdict was returned in favor of defendant on its plea of recoupment against the plaintiff in the sum of $358.43, and the plaintiff prosecutes this appeal.

Gregory L. Smith & Son, of Mobile, for appellant. Stevens, McCorvey & McLeod, of Mobile, for appellee.

GARDNER, J. The foregoing statement will suffice as a general outline of the case, and a basis for an understanding of questions to be determined upon this appeal.

[1, 2] The first assignment of error insisted upon by counsel for appellant relates to the rulings of the court overruling the demurrer to pleas 3 and 5; it being urged that the only implied warranty was that it was merchantable ammonia of the character purchased. Gachet v. Warren & Burch, 72 Ala. 288; McCaa v. Elam Drug Co., 114 Ala. 74, 21 South. 479, 62 Am. St. Rep. 88; Baer & Co. v. Mobile Cooperage Co., 159 Ala. 491, 49 South. 92; Thomas v. Irvine, 171 Ala. 332, 55 South. 109. We are of the opinion, however, that this question is unnecessary to be determined. These pleas rested upon an implied warranty, and it is shown without dispute that the sales of the ammonia were made under express warranties as to quality. Such being the situation, it is the well-understood rule, and indeed conceded by counsel for appellant in brief, as we understand them, that an express warranty of quality necessarily supersedes and excludes all implied warranties upon that subject. It was so determined, and this principle given full application by this court in the recent case of Holt v. Givens, 72 South. 257.[1] Conceding, therefore, for the purpose of this case, and without deciding the same, that pleas 3 and 5 were subject to the demurrer, yet, if error there was, it was clearly without injury, and no reversal of the cause could be predicated thereon. Holt v. Givens, supra. It might be noted also in this connection that pleas 7 and 9 were substantially the same as pleas

[1] 196 Ala. 640.

3 and 5, and to pleas 7 and 9 no demurrers were interposed, but practically the same replications were interposed as had been filed to pleas 3 and 5.

[3] It is next insisted by counsel for appellant that, inasmuch as there are a number of different sales and separate warranties as to each, it was necessary to show which particular ones were breached, and, without doing so, the amount of damages could not be ascertained, for the decreased value of ammonia incident to the defective condition of such of it as was impure was a material element of damages, and the amount thereof could not be known without showing what part, and how much, of the ammonia was defective. It is shown without dispute that both parties to the transaction fully knew and understood that all the ammonia purchased was for the purpose of charging these machines of the defendant for the manufacture of ice, and that therefore the ammonia would be commingled into a common mass and become one thing. It is without dispute, and indeed admitted by the plaintiff, that the quality of the ammonia was expressly warranted, and we are of the opinion that when the evidence of the manager of the plaintiff company is considered in connection with the letters shown to have been written in regard to the quality of these ammonias, it was sufficient to be properly interpreted by the jury as a warranty on the part of the appellant covering all the ammonia furnished by it to appellee for the purpose of charging the particular ice machines in question, including not only initial charges, but also such additional ammonias as might be deemed necessary to supplement the original charges. In addition to this, it further clearly appears that the seller knew all the shipments to be commingled, and that one impure charge in the machine would make the whole impure, and thereby the value of the entire impure mixture would be decreased to the amount which would have been its value if all of it had been impure, thus producing the same actual damages. In addition to this, however, we are of the opinion that under the strict rule of pleading the plaintiff has in fact confessed the pleas, except as to the amount of damages, as to which its intended sufficient data was not furnished by the evidence.

Pleas 4, 6, 8, and 10 each allege that the plaintiff warranted the anhydrous ammonia to be perfectly pure and dry, and all the aqua ammonia to be absolutely pure, 26 degree aqua ammonia. Pleas 4 and 8 allege, in substance, that all the ammonia was impure and defective, and pleas 6 and 10 allege that the original charges of both machines consisted of the purchases made in January and February, and that a material portion of the ammonia in each of these charges was impure, and necessarily spread throughout the entire charge, thus rendering the whole impure, including that subsequently bought.

Each of these pleas contain appropriate averments showing knowledge on the plaintiff's part necessary to enable the defendant to recover special damages. No demurrer was interposed to any of those pleas, nor were any issues joined thereon. The only pleadings in response were the special replications noted in the statement of the case. The replications to pleas 4 and 6 allege that the price of the ammonia was but a part of the cause of action sued on; that the plaintiff sold the ammonia by description only, the aqua ammonia as 26 degree aqua ammonia at 60 degrees Fahrenheit, and so warranted, and the anhydrous ammonia as dry, anhydrous ammonia, and so warranted, and did not otherwise warrant the same; that the said aqua ammonia was merchantable 26 degree aqua ammonia, and the anhydrous ammonia was merchantable, dry, anhydrous ammonia, and that the said ammonias were sold deliverable at point of shipment. The replications to pleas 8 and 10 are substantially the same as to those of pleas 4 and 6, with the omission of the averment that the price of ammonia was only a part of the cause of action sued on.

Referring to the proof, it appears that the suit was for $2,631.92, but only an account for $2,363.97 was proven, all of which was for the purchase price of the ammonias mentioned; and therefore, if the plaintiff was suing on any other claim, the proof failed to so disclose; and the first averment of replications to pleas 4 and 6 is therefore not supported.

The pleas allege an express warranty as to purity, and the averment of the replications omits this entirely. The proof of the plaintiff itself as disclosed by the testimony of the manager, as well as by the correspondence offered in evidence, further supports the pleas in respect to the express warranty as to purity.

[4] The averment in the replications that the ammonias were to be delivered at the point of shipment, New Orleans, is disproved by plaintiff's manager, whose testimony shows that it was sold to be delivered in Mobile. It, therefore, clearly appears that the special replications are without support in the proof. No issue was joined upon the pleas, and there was no general traverse or denial. This situation comes, therefore, under the rule long established in this state that such pleas are to be taken as confessed. Miller v. Johnson, 189 Ala. 354, 66 South. 486. Aside from this question of pleading, after a careful examination of the evidence in this cause, we find that the pleas are amply supported by the proof offered, not only in respect to the express warranty as to the purity of the ammonias, but also in respect to the quality of the ammonia itself.

The operation of two machines in the manufacture of ice with these ammonias, with the result of the great decrease of the rated capacity of the machines, was but one mode

of establishing the impurity of the ammonias and the unfitness for the purpose for which it was purchased, with the knowledge of the plaintiff.

There was other proof tending to establish its impurity, aside from this, including the chemical test; and, aside from the question of pleading, we would be unwilling to disturb the judgment on account of the ruling of the court in denying the motion for a new trial.

Finding no reversible error, the judgment will be affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and SAYRE, JJ., concur.