224 So.2d 873

**Ralph Hiram LIVINGSTON et al.**

**v.**

**Joe J. BEDFORD, Jr., et al.**

**6 Div. 394.**

Supreme Court of Alabama.

July 3, 1969.

McEniry, McEniry & McEniry, Bessemer, for appellants.

Brobston & Brobston, Bessemer, for appellees.

COLEMAN, Justice.

Plaintiffs appeal from a judgment of voluntary nonsuit taken in an action for breach of a contract.

As last amended, the complaint contained three counts. The error complained of is that the court erred in sustaining the demurrer to the complaint.

As we understand plaintiffs' brief, they do not insist that the court erred in sustaining the demurrer to the first two counts, but they do insist that the court erred in sustaining the demurrer to Count III which recites as follows:

"Plaintiffs claim of the Defendants the sum of Five Thousand ($5,000.00) Dollars for damages for breach of a contract for the purchase of a house built by the Defendant, Joe J. Bedford, Jr., for the Plaintiffs on the 30th day of July, 1963, said house being located on:

"Lot 11 in Block 6 according to the Survey of the Bessemer Coal, Iron & Land Company's Glenview Second Addition, Map Book 11, Page 27

"which was owned at that time by the Defendant, Joe J. Bedford, and subsequently conveyed to Plaintiffs, a copy of said deed attached hereto as Exhibit 'A'

as if set out in full at this point; they would further show that while said house was under construction and at the time said house was partially constructed with only framming completed, in, to wit, May of 1963, plaintiffs talked to Defendant, Joe Bedford, Jr., regarding the purchase of said house when completed and were assured by him that said house was constructed to this point of the best materials and in the best workmanlike manner; Plaintiffs were shown blue prints of its proposed construction and were further assured by Joe J. Bedford, Jr., that the house would be completed with the best quality materials an (sic) and in the best workmanlike manner and relying on these representations and subject to these agreements, the Plaintiffs signed a sales contract for the purchase of the real property. Plaintiffs would further show that when Joe J. Bedford, Jr., was unable to complete the sale under this contract due to financing, a second contract for its sale was executed by the Plaintiffs and Joe J. Bedford, Jr., providing for the obtaining of FHA loan which was obtained by the seller, Defendant, and the deed shown as Exhibit 'A: was obtained on July 30, 1963.

"Your Plaintiffs would further aver that after they had resided in said house for a day or two in August, 1963, they discovered that drains in the plumbing were not connected and upon notification the Defendant Joe J. Bedford, Jr., attempted to correct this difficulty but failed to do so and that the drain from the kitchen sink will flow into the bathtub; that in December of 1963 that the boards on the floor began to separate and the Defendant Joe J. Bedford, Jr., agreed to correct this difficulty by replacing the floor throughout the entire 1st floor; the Plaintiffs would further show that rather than replacing the floors he attempted to refinish the floor already there and fill the resulting cracks and that this failed to correct this defect in that the floors are still cracked.

"Your plaintiffs would. also show this court that the steps in said house were made of pine rather than hardwood as Plaintiffs were assured by Defendant, Joe J. Bedford, Jr., they would be, and that the Defendant in order to correct this after the closing of the sale and after the house was occupied by Plaintiffs sent a man to place rubber strips on said steps but that these strips would not fit and were not installed.

"Your Plaintiffs would further show that in addition to the defects mentioned above and that prior to the filing of this suit, the front porch settled so much one of the columns of said house was in danger of falling; that the kitchen floor settled and the tile in this entire room cracked and broke; that water comes into the basement; that a door leading to the outside lets light and air into said house when said door is closed, all to the great damages of Plaintiffs aforesaid."

There is no exhibit attached to Count III. We suppose that by referring to "Exhibit 'A'" in Count III, plaintiffs intended to incorporate in Count III the same Exhibit A which appears to be attached to Count II. It is questionable whether the exhibit is sufficiently incorporated in Count III, but we will not belabor this point because the exhibit would not save Count III from the demurrer, if the exhibit were properly made a part of Count III.

The exhibit is a copy of a warranty deed executed on the 30th day of July, 1963, by defendant, Joe J. Bedford, Jr., and his wife, conveying to plaintiffs the lot of land described in Count III.

The pertinent allegations of Count III are:

"Plaintiffs claim of the Defendants . . damages for breach of a contract for the purchase of a house built by the Defendant, Joe J. Bedford, Jr., for the Plaintiffs on the 30th day of July, 1963, . . . . . which was owned *at that time* by the Defendant, Joe J. Bedford, and subsequently conveyed

to Plaintiffs, . . . . while said house was under construction and . . . . was partially constructed . . . . in, to wit, May of 1963, Plaintiffs talked to Defendant, Joe Bedford, Jr., regarding the purchase of said house *when completed* and were assured by him that said house was constructed to this point . . . . in the best workmanlike manner; . . . . and were further assured by Joe J. Bedford, Jr., that the house would be completed . . . . in the best workmanlike manner and relying on these representations . . . . Plaintiffs signed a . . . . contract for the purchase of the real property. . . . . Joe J. Bedford, Jr., was unable to complete the sale under this contract . . . . a second contract . . . . was executed . . . . and the deed shown as Exhibit 'A: was obtained on July 30, 1963. . . . . Plaintiffs . . . . further aver that after they had resided in said house for a day or two in *August, 1963, they discovered* . . . ." (Emphasis supplied) the alleged defects in , the house and defendant agreed to correct them but failed to do so, all to plaintiffs' damage.

■ ■ ■ Plaintiffs mention two contracts in Count III. They do not allege either contract *in haec* verba or in substance. They do not clearly allege the date on which either contract was entered into. This court has said:

> " . . . . It is true that where an agreement has been modified by subsequent agreement, the plaintiff should declare on the agreement as modified. 13 C.J. § 835, p. 721. See also 17 C.J.S. Contracts § 535. . . . . " McClendon v. Eubanks, 249 Ala. 170, 177, 30 So. 2d 261.

In 17A C.J.S. Contracts § 535·i., p. 1046, the writer states:

> "Where one contract has been superseded by the substitution of another, it is proper to declare on the latter; but no action lies on the former; . . . . ."

A fair interpretation of Count III is that the first contract was superseded by the second contract. Plaintiffs cannot recover on the first contract.

Plaintiffs do allege that "a second contract . . . . was executed . . . . and the deed . . . . was obtained on July 30, 1963." Plaintiffs allege that they had conversations with defendant "regarding the purchase of said house when completed." (Emphasis supplied.) Plaintiffs do not allege when the house was completed.

■ As we read Count III, it is ambiguous and doubtful in that the allegations can be taken to mean that the contract to purchase, on which plaintiffs sue, was entered into prior to completion of the house or subsequent thereto. In that situation, the doubt will be resolved against the plaintiffs. Nunnally Co. v. Bromberg & Co., 217 Ala. 180, 186, 115 So. 230. We must, therefore, construe Count III to mean that the contract sued on was entered into after completion of the house.

■ In Druid Homes, Inc. v. Cooper, 272 Ala. 415, 131 So.2d 884, this court held there was no implied warranty that improvements located on real property sold were constructed in good and workmanlike manner. The court quoted from Williston on Contracts as follows:

> " 'The doctrine of *caveat emptor* so far as the title of personal property is concerned is very nearly abolished, but in the law of real estate it is still in full force. One who contracts to buy real estate may, indeed, refuse to complete the transaction if the vendor's title is bad, but one who accepts a deed generally has no remedy for defect of title except such as the covenants in his deed may give him. Therefore, if there are no covenants, he has no redress though he gets no title. * * * Still more clearly there can be no warranty of quality or condition implied in the sale of real estate and ordinarily there cannot be in the lease of it.

" 'It is generally true also that any express agreements in regard to land contained in a contract to sell it are merged in the deed if the purchaser accepts a conveyance. If, indeed, the vendor has made misrepresentations, even innocently, recission is possible in most jurisdictions, but no remedy is generally available for any breach by the vendor of any promise contained in the contract but omitted in the deed.' " (272 Ala. at 416, 131 So.2d at 885)

Plaintiffs undertake to distinguish the instant case from *Druid Homes*. Plaintiffs contend that they contracted to purchase a lot "upon which a seller (builder) is in the process of constructing improvements . . . ." We have undertaken to show that the allegations of Count III do not support plaintiffs' contention. Consequently, we hold on authority of *Druid Homes*, that Count III does not state a cause of action and that the court did not err in sustaining demurrer thereto.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and BLOODWORTH, JJ., concur.