252 So.2d 313

*In re* John W. COCHRAN and Lillie M. Cochran

v.

Paul KEETON and Charles Thompson, individually and d/b/a Keeton and Thompson.

Ex parte Paul KEETON and Charles Thompson, individually and d/b/a Keeton and Thompson.

8 Div. 418.

Supreme Court of Alabama.

Sept. 9, 1971.

Tompkins & Tompkins, Tuscumbia, for petitioners.

**440**

MADDOX, Justice.

Petitioners, Paul Keeton and Charles Thompson, individually, and d/b/a Keeton and Thompson, ask us to review the opinion and judgment of the Court of Civil Appeals, and to reverse and remand on the ground that the opinion is contrary to previous opinions of this Court. We granted the writ of certiorari and have reviewed the opinion and judgment rendered by the Court of Civil Appeals, and hereby affirm.

The Court of Civil Appeals recognized that this Court's decision in Druid Homes, Inc. v. Cooper, 272 Ala. 415, 131 So.2d 884 (1961) was applicable to the fact situation presented before it, but observed:

"After our study and consideration, and in view of the modern trend and authority, we are led to the conclusion that if the question here to be decided were presented to the Supreme Court of Alabama, the decision in *Druid* would be overruled, insofar as it adopts the rule of caveat emptor in the sale by a builder-vendor of a newly constructed home and that the principle of an implied warranty of fitness and habitability for the purpose purchased would be recognized." The Court of Civil Appeals further said:

"This Court has respectfully reached its decision in this matter after careful consideration, with the sole end in mind to serve the cause of justice, and with the sincere belief that the Supreme Court, if presented with the opportunity to review the decision of Druid Homes, Inc. v. Cooper, supra, in the light of recent authority, would agree with our decision. We know of no other means to present the matter for its consideration."

Being presented with the opportunity to review *Druid*, we do overrule *Druid* insofar as it adopts the rule of caveat emptor in the sale by a builder-vendor of a newly constructed house.

We have gone to the original record and files in *Druid*, and note that in the *Druid* case, no brief was filed by the purchaser and no argument was made in his behalf when the cause was argued and submitted. We also note that much of the law in this field has developed during the past decade. The modern trend, even in some of the jurisdictions from which this Court cited opinions in *Druid* is to repudiate the doctrine of caveat emptor in fact situations similar to the one here under consideration.

By affirming the Court of Civil Appeals in this instance, we realize that we have not answered all of the questions which may arise in the future as a result of our action here, but we take this most important first step.

Considerable comment has been made by legal scholars about the new trend toward judicial abolition of the doctrine of caveat emptor in real estate sales. Most scholars question the retention of the rule in view of current day conditions.

See: The Case of the Unwary Home Buyer; The Housing Merchant did it, E. F. Roberts, 52 Cornell Law Quarterly 835 (1967);

The Case for an Implied Warranty of Quality in Sales of Real Property, Haskell, 53 Georgetown Law Journal 633 (1965);

Caveat Emptor in Sales of Realty-Recent Assaults upon the Rule, Bearman, 14 Vanderbilt Law Review 541 (1961);

Caveat Emptor in Sales of Real Property—Time for a Reappraisal, Nielsen, 10 Arizona Law Review 484 (1968);

Implied Warranty of Fitness and Suitability for Human Habitation as Applied to the Sales of New Homes in Texas, 6 Houston Law Review 176 (1968);

Real Property—Implied Warranty in Sales of New House by Vendor, 58 Kentucky Law Journal 606 (1969–70);

Builder—Vendor's Implied Warranty of Good Workmanship and Habitability, 1 Texas Tech Law Review 111 (1969);

Real Property—Vendor and Purchaser—Implied Warranty, 45 Washington Law Review 670 (1970);

The Doctrine of Caveat Emptor as Applied to both the Leasing and Sale of Real Property; The Need for Reappraisal and Reform, 2 Rutgers Camden Law Journal 120 (1970);

Quare: Caveat Emptor or Caveat Venditor, Young and Harper, 24 Arkansas Law Review 245 (1970).

Illustrative cases from other jurisdictions which have held a builder-vendor liable on a theory of implied warranty are: Schipper v. Levitt & Sons, Inc., 44 N.J. 70, 207 A.2d 314 (1965); Kriegler v. Eichler Homes, Inc., 269 Cal.App.2d 224, 74 Cal. Rptr. 749 (1969); House v. Thornton, 76 Wash.2d 428, 457 P.2d 199 (Wash.1969); Carpenter v. Donohoe, 154 Colo. 78, 388 P. 2d 399 (1964); Bethlahmy v. Bechtel, 91 Idaho 55, 415 P.2d 698 (1966); Waggoner v. Midwestern Development Inc., 154 N.W. 2d 803 (S.D.1967); Humber v. Morton, 426 S.W.2d 554 (Tex.1968); Wawak v. Stewart, 247 Ark. 1093, 449 S.W.2d 922 (1970); Rothberg v. Olenik, 262 A.2d 461 (Vt.1970) Weeks v. Slavick Builders, Inc., 24 Mich.App. 621, 180 N.W.2d 503 (1970); affirmed, 384 Mich. 257, 181 N.W.2d 271 (1970). Some jurisdictions, however, still strictly apply the doctrine of caveat emptor but the trend appears definitely to be changing to the view we express here. See Annotation: Defective Home—Vendor's Liability, 25 A.L.R.3d 383.

Realizing that this decision changes a long standing rule as to the application of the rule of caveat emptor in the sale of a new house by a builder-vendor, we feel justice will be best served by holding that, except as to this plaintiff-appellant in the instant case, the rule here established shall apply only to cases arising out of future occurrences.

We affirm the judgment of the Court of Civil Appeals.

Affirmed.

SIMPSON, MERRILL, HARWOOD and BLOODWORTH, JJ., concur.

LAWSON, COLEMAN and McCALL, JJ., dissent.

HEFLIN, C. J., not sitting.

COLEMAN, Justice (dissenting).

Druid Homes, Inc. v. Cooper, 272 Ala. 415, 131 So.2d 884, was decided by this court June 29, 1961. There, the defendant had appealed from a judgment for plaintiff in an action claiming damages for breach of an agreement " * * * to purchase a house and lot wherein it was *implied* that the dwelling was of substantial construction and was built in a workmanlike manner. The breach * * * was that the house was not constructed in a workmanlike manner and that water drained from the bathroom facilities and emptied under the house without any drainage, and damage resulted." (Emphasis supplied.) 272 Ala. at 415, 131 So.2d at 885.

This court said:

"The first argued assignments of error allege error in the overruling of the demurrer to the two counts of the complaint.

"[1] This presents a question of first impression in this state. The question

may be posed: Is a warranty implied, as a matter of law, in a contract to purchase real estate, that the improvements located thereon were constructed in a good and workmanlike manner?

"*The great weight of authority does not support implied warranties in real estate transactions but requires any purported warranties to be in written contractual form.* (Emphasis Supplied) 92 C.J.S. Vendor & Purchaser § 578; 55 Am. Jur., Vendor and Purchaser, § 368; Thompson on Real Property, Vol. 8, § 4599. No decision has come to our attention which permitted recovery by the vendee of a house upon the theory of implied warranty." (272 Ala. at 416, 131 So.2d at 885.)

This court then discussed eleven or more cases in support of its declaration of the law and further said:

"We feel that *the rule of the cases cited above is sound, makes for certainty in the field of real estate law,* and should prevail in this jurisdiction. *Purchasers may protect themselves by express agreement embodied in their deeds,* and *vendors may be certain of their position as to liability* for the condition of premises they have sold. (Emphasis Supplied)

" * * *

"Since neither count stated a cause of action, it follows that the demurrer to both counts should have been sustained.

"The judgment of the circuit court is reversed and one is here rendered sustaining the demurrer.

"Reversed and *rendered.* (Emphasis supplied.)"

In 1967, a contractor-builder appealed from a judgment for the owner " * * * for breach of a contract made with appellees to construct for them in a good and workmanlike manner a dwelling house * * *." Carter v. West, 280 Ala. 603, 196 So.2d 718. The contractor relied on Druid Homes. This court affirmed the judgment for the owner and said:

" * * * Huston Carter expressly agreed to build the house in accordance with these specifications. He breached this express agreement. Cases like *Druid Homes, Inc.,* supra, were not intended to indicate that there was no cause of action for the breach of an express agreement to construct improvements on real estate in a workmanlike manner. * * * It should be noted here that the plaintiffs did not sue on an implied warranty, but an express agreement made between them and Huston Carter whereby the latter agreed to build the house in accordance with agreed upon plans and specifications. * * * The contract sued on was not for the sale of land, but was for personal services, to be performed by one party for another. The evidence conclusively shows that the appellant breached this express contract. * * *." (280 Ala. at 604, 196 So.2d at 720)

In 1969, plaintiffs appealed from a judgment of voluntary nonsuit in an action "for * * * damages for breach of a contract for the *purchase* of a house built by the Defendant, Joe J. Bedford, Jr., for the Plaintiffs * * *." Livingston v. Bedford, 284 Ala. 323, 324, 224 So.2d 873. This court affirmed the judgment favorable to defendant and said:

" * * * Consequently, we hold on authority of *Druid Homes,* that Count III does not state a cause of action and that the court did not err in sustaining demurrer thereto." (284 Ala. at 327, 224 So.2d at 876)

In Central Stikstof Verkoopkanter, N. V. v. Walsh Steve. Co., 380 F.2d 523, the United States Court of Appeals, Fifth Circuit, affirmed a judgment for defendants, rendered by the United States District Court for the Southern District of Alabama, in a suit for damages to commercial fertilizer stored at the State Docks.

Among other things, the Circuit Court said:

"This limitation on the existence of an implied warranty brings the *Broyles* [Broyles v. Brown Engineering Corp., 275 Ala. 35, 151 So.2d 767] decision in line with the general Alabama rule that an implied warranty can not be inferred as to the same general subject matter covered by an express warranty in the contract. Louis Pizitz Dry Goods Co. v. House of Van Praag, 219 Ala. 183, 121 So. 701 (1929); Grassell [Grasselli] Chem. Co. v. City Ice Co., 200 Ala. 172, 75 So. 920 (1919); Holt Lumber Co. v. Givens, 196 Ala. 640, 72 So. 257 (1915). Thus, for example, it is clearly established that no implied warranty of workmanlike construction exists in the case of the sale of a house, or in similar real estate transactions. Druid Homes, Inc. v. Cooper, 272 Ala. 415, 131 So.2d 884 (1961). Since Walsh's contract limited its liability for damage to cargo to the physical damage resulting from its negligence, we believe that under applicable Alabama law it is not permissible to draw the inference that Walsh impliedly warranted to perform in a competent and workmanlike manner. * * * ." (380 F.2d at 531)

In 25 ALR 3rd, p. 419, § 6(c), the annotation cites, in addition to *Druid Homes*, eighteen cases from nine other states, which follow the view that no implied warranties as to condition, quality, or fitness arise in the sale of real estate. The oldest one of the cases thus cited was decided in 1916, the next oldest in 1930, two in 1932, six from 1952 to 1959, and eight from 1961 to 1968. In one of these cases, the Court of Appeals of Maryland said:

"We recognize that as the law of this state stands today except in unusual circumstances there is no implied warranty in the sale of a completed residence and therefore the ruling of the lower court sustaining the defendants' demurrer must be upheld. We are also cognizant of a trend in some courts to find that an implied warranty exists where houses are mass produced and sold to individual purchasers by a builder-developer. (Citations Omitted) We think that while there is some merit in the newer view that sales of some types of realty should be covered by an implied warranty, similar to the warranty implied in the case of many sales of goods and personal property today, that such a change should be made by the legislature rather than by the courts of this state." Allen v. Wilkinson, 250 Md. 395, 243 A.2d 515.

In Skelton v. Weaver, 266 Ala. 335, 96 So.2d 288, this court quoted from the dissenting opinion of Judge Collier in Bryant v. Simpson, 3 Stew. 339, 343, as follows:

"* * * If it be a decision founded in error, it is better to permit *communis error facere begun,* than to unsettle the law, by disregarding it. I believe with Mr. Jenkins, that 'variety of judgments and novelty of opinions, are the two great plagues of a commonwealth.' The decisions of a tribunal of the last resort, should possess permanence and stability of character. They should not be disregarded by the Court that pronounced them, though they may not correctly ascertain the law, unless a greater inconvenience would result from an adherence to them. Next to correctness of decision, nothing is so well calculated to give character to the bench, as a regard for precedent and harmony in its judgments. * * *."

*Druid Homes* has been the law in Alabama for ten years. The decision is supported by sound reasoning and respectable authority cited in the opinion and 25 ALR 3d 419. This court reaffirmed and followed *Druid Homes* two years ago, July 3, 1969, in Livingston v. Bedford, supra. I would follow *Druid Homes* now and reverse the judgment of the Court of Civil Appeals in the case at bar.

LAWSON and McCALL, JJ., concur.

**444**

LAWSON, Justice (dissenting).

I concur in the dissent of Mr. Justice Coleman but would like to make further observations.

As early as 1842, in the case of Cullum v. Branch Bank at Mobile, 4 Ala. 21, this court recognized the distinction between executory and executed contracts for the sale of realty in regard to implied warranties. In the case last cited it was observed:

"Such are the rights of a purchaser when he has made no stipulations with respect to the title; but there is a period when the contract of the parties is determined by its execution on the part of the vendor, and then the rule of caveat emptor applies with its utmost rigor. This period is when the conveyance has been executed by all the necessary parties, and accepted by the purchaser; after this, if the purchaser is evicted by a title to which his covenants do not extend, he cannot recover the purchase money, either at law or in equity. * * *."

In Asbury v. Cochran, 243 Ala. 281, 283, 9 So.2d 887, 889, decided in 1942 in an opinion prepared for the court by the late Mr. Justice Foster, it was said:

"The general rule is that in the absence of stipulations to the contrary, every contract for the sale of real estate implies that a good title will be made. Kirkland v. O'Kelly, 218 Ala. 68, 117 So. 420; Baker v. Howison, supra [213 Ala. 41, 104 So. 239, 52 A.L.R. 1452].

"This applies to an executory contract for the purchase and sale of real estate and is given by law, and exists until the contract has been performed by the execution of a deed. When that is done *the purchaser must rely on the warranty in his deed; and if there is none, the rule of caveat emptor applies. * * *.*" (Emphasis supplied.)

In 92 C.J.S. Vendor and Purchaser § 183 (b), page 15, it is said:

"In most jurisdictions the implied warranty of title which exists when the contract of sale is executory is held not to exist when the contract has been executed by the delivery and acceptance of the deed of conveyance, but in such case the vendor is liable, in the absence of fraud or mistake, only on the covenants contained in the deed, it being assumed that, if the purchaser desires to protect himself from a defective title, he will have proper covenants inserted in the deed, *and, if he does not, the doctrine of caveat emptor applies and he is without remedy."* (Emphasis supplied.)

The case of Asbury v. Cochran, supra, is cited in support of the language which we have italicized above.

I recognize that the authorities hereinabove referred to deal with the question of title and not with the condition of a structure on real estate; but the rule applies across the board in my opinion and it was so held in the *Druid Homes* case decided in 1961 and followed in Livingston v. Bedford in 1969. The *Druid Homes* case and Livingston v. Bedford are both cited in the dissenting opinion of Mr. Justice Coleman. The Court of Civil Appeals and this court have now cast into the judicial wastebasket two cases, directly in point, decided by this court within the past ten years, apparently on the theory that "Most scholars question the retention of" the "doctrine of caveat emptor in real estate sales." The legal scholars to whom reference is made apparently are the writers of articles appearing in the legal periodicals cited in the court's opinion.

I do not believe that the court's opinion is in harmony with the holdings of the majority of courts in this country (25 A.L.R.3d 383) and yet we are in a more or less cavalier manner departing from principles long embedded in the jurisprudence of this state and which, in my opinion, will create confusion, doubt, and uncertainty in real estate transactions.

The author of the court's opinion recognizes that many questions will have to be

answered in future litigation because of the action taken by the court in this case, thereby confronting the seller, the buyer, the practicing attorney, and the trial bench with innumerable problems at which guesses must be made pending future decisions by this court.

The purchaser of a new home may protect himself by requiring covenants in the deed concerning the construction of the house which he is purchasing in the same manner as he must do in order to protect himself in regard to title.