533 So.2d 241 (1988)
Frederick J. O'CONNOR and Beverly D. O'Connor
v.
George M. SCOTT, Jr., et al.
87-750.
Supreme Court of Alabama.
September 23, 1988.
Richard H. Ramsey III and Richard H. Ramsey IV, Dothan, for appellants.
T.E. Buntin, Jr., of Buntin, Cobb & Shealy, Dothan, for appellee George M. Scott, Jr. and Sara Scott.
*242 Joseph T. Carpenter of Carpenter & Gidiere, Montgomery, for appellee Tom West.
ADAMS, Justice.
The plaintiffs, Frederick J. O'Connor and Beverly D. O'Connor, husband and wife, appeal from a summary judgment for the defendants, Tom West Company, Inc., and George M. Scott, Jr., and Sarah Scott, husband and wife. The O'Connors brought their suit in the Houston County Circuit Court, claiming fraud and suppression of a material fact that the defendants were under a duty to disclose. We affirm.
On July 31, 1981, the plaintiffs entered into a written agreement to purchase a house and lot in Dothan, Alabama, from the Scotts. Tom West, the owner of Tom West Company, Inc., was given the exclusive listing on the property after he informed the defendants, the Scotts, that the plaintiffs were looking for a home. Defendant George Scott testified that he was an experienced builder and had engaged in the business of building residential and commercial property in Atlanta, Georgia, from 1969 to 1976. He moved to Dothan, Alabama, in 1977 and built the subject house for his own personal use and lived in it from February 1980 until October 1981. He stated that he did not build the house for the purpose of immediate resale, although this was a contention of the plaintiffs.
Plaintiffs viewed the house on several occasions and did not find any visual evidence of structural defects. The Scotts also testified that they saw no evidence of structural defects while they lived in the property for almost two years. However, the plaintiffs alleged in their complaint that the defendants represented to them that the house was suitable for habitation, in good condition, and structurally sound when, in fact, it was not. Further, the plaintiffs alleged, the defendants knew this to be a misrepresentation of fact at the time they made it.
When the O'Connors closed the sale of the property on September 30, 1981, they knew they had signed a contract with the sellers in which there was the following provision: "Seller warrants H & A/C system, electrical and plumbing system, appliances to be in proper working condition at occupancy. Home otherwise sold in `as is' condition."
About two years after the sale was closed, the plaintiffs noticed a crack in the sheetrock in the wall and ceiling area of the master bedroom, and some unevenness and buckling of the hardwood floors, and sagging of carpeted floors. The plaintiffs attempted to patch the cracks, but were not successful. A contractor hired by the plaintiffs informed them, in the spring of 1986, that the problems with the house were caused by settling due to insufficient piers in the foundation.
The plaintiffs contended in their complaint that the defendants were guilty of a civil fraud under Code of Alabama 1975, § 6-5-101, which reads as follows:
"Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud."
The plaintiffs also contended that the defendants suppressed the fact that the foundation was defective, in violation of Code of Alabama 1975, § 6-5-102, which states:
"Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case."
The appellants frame two issues for our review:
1. Did the plaintiffs produce at least a scintilla of evidence to support their position and thereby defeat summary judgment?
2. Did the trial court err in granting summary judgment in favor of the defendants, even though the plaintiffs had established a prima facie case under Code of Alabama 1975, §§ 6-5-101 and 6-5-102?
A great portion of the O'Connors' brief is given to the discussion of how the *243 actions of the defendants fit into the statutory causes of action mentioned above. However, if the facts in this case do not justify an application of these statutes, a discussion of what might be, in another factual setting, is unnecessary. First and foremost, we must determine whether the O'Connors purchased a new residence. Although in the seminal case of Cochran v. Keeton, 287 Ala. 439, 252 So.2d 313 (1971), we abrogated the doctrine of caveat emptor that had been established in Druid Homes, Inc. v. Cooper, 272 Ala. 415, 131 So.2d 884 (1961), we did it only as far as newly constructed homes are concerned.
In Ray v. Montgomery, 399 So.2d 230 (Ala.1980), plaintiffs sued an owner of a used residence and the real estate agent, claiming that they had been defrauded and deceived in that they were not told that the property they were purchasing had termite damage. As in the case before us, the contract of purchase had an "as is" clause in it. In Ray, supra, we said:
"Alabama retains the caveat emptor rule with regard to the resale of used residential real estate. Druid Homes, Inc. v. Cooper, 272 Ala. 415, 131 So.2d 884 (1961). Although we have abrogated the caveat emptor rule in sales of new residential real estate by a builder/vendor, we have not extended the Cochran rule to the sale of used homes, and we are not inclined in this case to depart from a long-standing rule which provides certainty in this area of the law. A purchaser may protect himself by express agreement in the deed or contract for sale."
Therefore, unless there is a showing that the real estate herein involved was new, the doctrine of caveat emptor still has application.
In order to meet their burden of showing that the residence here was a new residence, the plaintiffs call our attention to our case of Waites v. Toran, 411 So.2d 127 (Ala.1982). In that case, the plaintiffs rented one side of a duplex property that was new at the time they rented it. Within weeks, they were negotiating with the owner to purchase the side they occupied. Within some three to four months after their occupancy, they had closed the sale for the purchase of that property. This Court reasoned that even though the plaintiffs had lived in the property before it was purchased, this was no impediment to the application of the doctrine in the Cochran case. We reasoned that even in the purchase of new residences, sometimes potential owners live in them for a short period before the loan is closed. One of the criteria for application of the Cochran doctrine is that the residence had not been inhabited by any other person prior to the purchase of the residence. This obviously could not run against the plaintiffs because they were not another person. However, that is not true in this case. The Scotts were "other persons," and the undisputed testimony is that they lived there for almost two years and made it their home.
Finally, the O'Connors cannot defeat summary judgment, because even if there were misrepresentations, which we have reason to doubt, rather than statements of opinion concerning the soundness and suitability of the property they were purchasing, their claim must fail for another important reason. In Druid Homes, Inc. v. Cooper, 272 Ala. 415, 131 So.2d 884 (1961), we held that a vendor or purchaser may protect himself by limiting his liability for the condition of the premises sold. The sellers did so in this case by limiting their warranty to only the heating and air conditioning system, the electrical and plumbing systems, and the appliances. All other aspects of the property were sold in an "as is" condition. This included, obviously, the foundation.
For the foregoing reasons, the circuit court did not err in granting the summary judgment to as plaintiffs' claims of fraud and suppression of material fact.
AFFIRMED.
TORBERT, C.J., and MADDOX, SHORES, BEATTY and STEAGALL, JJ., concur.
JONES and HOUSTON, JJ., concur in part and dissent in part.
*244 HOUSTON, Justice (concurring specially in part and dissenting in part).
I would affirm as to defendant Tom West.
The misrepresentation claim is supported by a statement in Frederick O'Connor's affidavit filed in opposition to the motion for summary judgment, that West assured the plaintiffs that the home was "structurally sound." In a deposition taken three weeks before the affidavit, Frederick O'Connor had testified that he knew of nothing that West had told him about the house that was untrue and that he could not recall that West ever made any statement to him concerning the structural aspects of the house. West prudently suggests that O'Connor's isolated statement, removed from the totality of the witness's testimony, cannot satisfy the scintilla-of-evidence sufficiency standard, in accordance with Alabama Farm Bureau Ins. Co. v. Hunt, 519 So.2d 480 (Ala.1987); Wilson v. Alabama Power Co., 518 So.2d 105 (Ala. 1987) (Houston, J., concurring specially); and Creel v. Brown, 508 So.2d 684 (Ala. 1987) (Houston, J., concurring specially).
Here, we are faced with a witness's apparent change of testimony, which would go to his credibility. Credibility is a jury question. West either made the representation, if you believe O'Connor's affidavit, or he did not make it, if you believe O'Connor's deposition. While such discrepancy concerns us, who want to perceive justice as being truth in action, it does not bring this case within the doctrine announced in Alabama Farm Bureau Ins. Co. v. Hunt, supra; Wilson v. Alabama Power Co., supra; or Creel v. Brown, supra; that an isolated statement of a witness, removed from the totality of the witness's testimony, cannot satisfy the scintilla-of-evidence standard. We must believe that thorough and sifting cross-examination of O'Connor, on this apparent inconsistency, would permit the trier of fact to ascertain the truth.
I assume, as I must in reviewing the order granting summary judgment to West, that West did state that the house was "structurally sound." Even so, the trial court did not err in granting West's motion for summary judgment. West is a real estate salesman, not a contractor, and his statement was an opinion, not a statement of fact. Harrell v. Dodson, 398 So. 2d 272 (Ala.1981); Ray v. Montgomery, 399 So.2d 230 (Ala.1980). Likewise, as I understand O'Connor's affidavit, West's "structurally sound" comment was made before the execution of the contract that contained the "as is" provision. O'Connor had no right to rely upon the oral representation of a real estate agent that was made prior to his execution of the "as is" contract. Massey v. Weeks Realty Co., 511 So.2d 171 (Ala.1987).
Therefore, the trial court did not err in granting West's motion for summary judgment as to the misrepresentation claim.
The evidence establishes that West, before the O'Connors bought the house, had no knowledge that the house was not adequately constructed. The O'Connors even admit in their excellent brief that "the alleged defect was one that only the owner and contractor, the defendant, George M. Scott, Jr., could have been aware of." One can only be liable for concealing facts of which he has knowledge. Lee v. United Federal Sav. & Loan Ass'n, 466 So.2d 131 (Ala.1985); Harrell v. Dodson, supra. The trial court did not err in granting summary judgment to West on the suppression claim.
There is no allegation of a breach of an implied warranty in the O'Connors' complaint; therefore, whether the doctrine of caveat emptor would apply to the sale from the Scotts to the O'Connors is not before us. Even if it were to apply, it would be immaterial, with respect to West, since the implied warranty, if any, would not extend to the real estate salesman.

I believe that there was a scintilla of evidence of fraudulent concealment as to George M. Scott, Jr. Mr. Scott constructed the house, was very experienced in the construction field, and had a degree in building construction from the Georgia Institute of Technology. There was expert evidence before the trial court, at the time summary judgment was granted, that the *245 home had inadequate support throughout the foundation of the house; that the "footings were not sufficiently and properly installed on [sic] the house"; that the house was not built in compliance with the minimum building requirements of the Southern Building Code in effect at the time it was built; and that these inadequacies could be ascertained only by an expert and only after thorough investigation. The inadequacy of the construction was denied by Scott. This makes a fact question for resolution by the jury requested by the O'Connors.