This is an appeal from a summary judgment entered in favor of defendants Burl Pounders Realty, Inc., and Ashlock-Pounders Building Company in an action alleging fraud and misrepresentation with regard to a house purchased by them. We affirm.
On March 31, 1989, John Dow Haygood and his wife, Dottie, purchased a house from Bryan Ashlock and his wife, Tammy, who was a real estate agent for Burl Pounders Realty at the time of the sale.[1] The house had been constructed by Ashlock-Pounders Building Company; however, the Ashlocks had lived in it for approximately three years. Therefore, the sale was one of a "used" residence. See O'Connor v. Scott, 533 So.2d 241
(Ala. 1988), wherein we held that a house was a "used" residence where a builder had constructed it for his own personal use and had lived in it for almost two years prior to the sale. The Haygoods allege that prior to purchasing the house, they inquired of the Ashlocks concerning the construction of the basement and whether the basement had ever leaked. They contend that Bryan Ashlock represented to them that the basement had been well built and that there had been no leakage problems. The Haygoods said that they purchased the house in reliance on the representations of the sellers. In July 1989, the basement of the house collapsed. The Haygoods sued the Ashlocks, the real estate agency, and the builders, alleging breach of warranty of habitability; this claim was later amended to add allegations of misrepresentation and fraud. Although the judge refused to enter summary judgment in favor of Tammy and Bryan Ashlock, the judge did enter summary judgment in favor of Burl Pounders Realty and Ashlock-Pounders Building Company. The court made that judgment final pursuant to Rule 54(b), A.R.Civ.P. The plaintiffs appealed.
First, the Haygoods argue that Ashlock-Pounders Building Company was not entitled to a summary judgment. We disagree. As stated above, the sale of this residence was not the sale of a new residence, and, therefore, it did not come with a warranty of habitability. The Ashlocks lived in the house for approximately three years before its sale and had considered it their home. They had even added a swimming pool in the backyard during the time that they resided there. The Haygoods contend that in spite of these facts, they were in privity with Ashlock-Pounders Building Company simply because two of the partners of the building company lived in the house and it had not previously been sold to a third party. Therefore, they argue, the trial judge should not have entered summary judgment against the builders. This argument has no merit. The Ashlocks considered this house to be their home for almost three years, and the fact that they were partners in the building company that built the house does not change the fact that the residence was conveyed by them, and not by the building company, to the Haygoods. The building company received no profits from the sale and had no part in the sale of the property.
The Haygoods also contend that Burl Pounders Realty was not entitled to a summary judgment, because, they say, Tammy Ashlock was an agent of the real estate agency when the house was sold. They also contend that Burl Pounders himself had made misrepresentations to them regarding the condition of the basement prior *Page 1088 
to their purchase. The misrepresentation allegedly made by Burl Pounders was set forth in the affidavit of Mrs. Haygood, which stated as follows:
 "My name is Dottie Haygood and I am a plaintiff in the above-styled cause. My husband, John Dow Haygood, and I were looking at the house on Dearborn Avenue in Muscle Shoals during open house. Tammy Ashlock told us that they had thought about selling the house, and that they would 'if the price was right.' We told her that we were interested in looking at the house. Before we left open house she told us to come by and look at it. She said they had almost sold the house to a man from out of town. Bryan Ashlock told us that 'a realtor's house is always for sale,' and that they were used to moving because they had moved five times in the last seven years.
 "My husband and I went by and looked through the house. When we went into the basement John questioned Bryan about the construction of the basement. He asked him if it had ever leaked and Bryan said, no, it is well constructed. Bryan then went on to explain about the construction of the basement.
 "Approximately three days later we spoke to the Ashlocks about the price on the house. Bryan Ashlock explained that the value was in the house, front door, bathroom fixtures, curtains, basement, pool, etc. We again looked at the house and again were told that the value was in the house.
 "I was further present when my husband made the statement to Burl Pounders that he didn't think it was a good idea to build a full basement on a level lot. Mr. Pounders told him 'No, there was absolutely no trouble with that at all'; that he had a full basement at his house on a level lot, and that his daughter and son-in-law had a full basement with a level lot; and that they had never had any leaking or any other sort of problems with them. My husband and I relied upon the representations of the Ashlocks and in reliance thereon purchased the house from the Ashlocks.
 "My attention has been drawn to an 'as is' statement that I signed. I signed this statement when Tammy Ashlock asked me to come over to her house prior to the closing. When she pointed it out to me I asked her what it meant. She said 'This is just in case an appliance tears up so that y'all can't come back against us.' Based upon that explanation from her I signed the statement."
Although the Ashlocks deny having had knowledge of any defects in the basement, the Haygoods offered evidence that Bryan Ashlock, in 1986, had hired someone to do some patching and repair work on leaks that were occurring there. Mr. McClure, who was hired by the Ashlocks to do the repair work, stated the following in his affidavit:
 "In March 1986 Bryan Ashlock employed me to do some patching and repair work on leaks that he had in the basement of the house that I understand is at issue in this case. There was cracking in the foundation walls in the basement with water seepage that was staining the wall. This crack was where the blocks had bulged in. It thus allowed water to seep into the house. This would also be a strong indication of a failure to adequately waterproof the outside walls where the fill dirt had been placed during construction."
Because Tammy Ashlock was an agent of the real estate agency, the appellee, Burl Pounders Realty, contends that she was required, as a manner of custom and practice, to transact the sale of her home through the real estate agency and that that is the reason Burl Pounders Realty received a commission on the sale. No other agent from the real estate agency showed the Ashlocks' home to potential buyers. Pounders also contends that prior to the closing of the loan, the Ashlocks asked the Haygoods to sign an "as is" statement. Although the Haygoods argue that the Ashlocks told them that the effect of such a statement would be as to appliances only, Pounders contends that the statement itself states otherwise and indicates that the Haygoods did not rely on any pre-sale statements regarding the condition of the basement. Pounders relies on the case ofMassey Weeks Realty Co., *Page 1089 511 So.2d 171 (Ala. 1987), wherein this Court held that where representations were made to a purchaser who later signed an "as is" statement, as well as a purchase agreement containing the following provision, that purchaser could not have relied on the previous statements of the seller:
 " 'The agents do not warrant or guarantee the condition of this property or any of the equipment therein.' "
Massey, supra, at 172. In the present case, the Haygoods signed an "as is" statement in addition to a sales contract containing the following provision:
 "Neither the Seller nor the Broker have made or make any other representations about the condition of the property and the Purchaser agrees that he has not relied on any other representation (including statements about square footage, age or condition of the property, or suitability for any particular use) except: ___________"
The Haygoods have alleged that they were induced to sign the "as is" clause by assurances of the Ashlocks that it related only to the appliances in the house.
There is no evidence in the record that the Haygoods relied on the representations, if any, of Burl Pounders Realty, Inc. The record indicates that the Haygoods allege that they relied on the statements of the Ashlocks, despite the "as is" clause and the above-quoted clause in the contract. Nowhere, however, is there an allegation that the Haygoods specifically relied on representations of Burl Pounders Realty, Inc. However, even if they had made such an allegation, the plaintiffs' signing of the two documents that indicated no reliance would have made the summary judgment for Burl Pounders Realty proper.
For the foregoing reasons, the judgment in this case is hereby affirmed.
AFFIRMED.
MADDOX, ALMON and STEAGALL, JJ., concur.
HOUSTON, J., concurs in the result.
[1] Tammy Ashlock is also the daughter of Burl Pounders, the owner-operator of that realty company.