This is an appeal from a summary judgment in favor of the defendants, John and Sue Strickling. In 1986, the Stricklings purchased a tract of unimproved land in Decatur, which they intended to develop into a residential subdivision known as Sherwood Oaks. The Stricklings cleared the land and constructed curbs, gutters, drainage ditches, sewer mains, etc. The plaintiffs, Steve Morris and his father, Jack, purchased a vacant lot in the recently developed subdivision for the purpose of building a house to sell. At the time of the purchase, the Morrises did not question the Stricklings regarding the suitability of the lot for the construction of a house, nor did they request that any subsurface soil tests be performed. After the house was constructed, they began to notice that there was excessive leakage in the crawl space under the house. Subsequently, a crack developed along the foundation of the house and the Morrises discovered all types of trash near the base of the house. Thereafter, they discovered that the lot on which the house was situated had, at some time previously, been a trash dump site.[1] They sued the Stricklings, alleging breach of an implied warranty with respect to the sale of the lot; fraudulent misrepresentation; suppression of a material fact; deceit; negligent development or construction of the lot; and strict liability in tort. The trial judge entered a summary judgment as to all claims, holding that the doctrine of caveat emptor applied to the sale of the lot and, therefore, that the Stricklings were entitled to a judgment as a matter of law. See Rule 56(c), A.R.Civ.P. The Morrises appeal. We affirm.
The Morrises argue that the exception to the caveat emptor
rule as stated in Cochran v. Keeton, 287 Ala. 439,252 So.2d 313, 314 (1971) (holding that the rule of caveat emptor would no longer be applicable to the sale of a newly constructed house, and recognizing an implied warranty of fitness and habitability with regard to such sales), should be extended to situations, such as the one at bar, involving the purchase of an unimproved piece of property. We disagree.
The Court of Civil Appeals has addressed the purchase of real estate as follows:
 "Furthermore, while Alabama courts recognize the implied warranty of fitness and habitability for the purpose purchased [sic] in newly constructed homes, we know of no such implied warranty extending to the purchase of lands. The physical condition of the premises has fallen under the rule of caveat emptor. See Cochran v. Keeton, 287 Ala. 439, 252 So.2d 313 (1971); 77 Am.Jur.2d Vendor and Purchaser § 329."
Scott v. Gill, 352 So.2d 1143, 1145 (Ala.Civ.App. 1977). While the Morrises argue that the Scott case dealt with "raw, vacant and unimproved land" as opposed to land improved for the purpose of building houses, we are unwilling to extend theCochran exception to land with no dwelling, because *Page 611 
we are of the opinion that the dispositive question would then become the often difficult question of whether a particular parcel is "improved" or "unimproved" and, if "improved," then for what purpose. Thus, we conclude that the trial court did not err in entering the summary judgment as to the breach of warranty claim.
Likewise, the trial court did not err in entering summary judgment with regard to the Morrises' claims for misrepresentation, deceit, and suppression. The Morrises did not question the Stricklings regarding the suitability of the lot that was purchased; and, in addition, the subdivision plans were public records and, as such, were available to the Morrises.
With regard to the Morrises' claim of strict liability in tort, again, the doctrine of caveat emptor precludes recovery and, therefore, summary judgment was proper. The Morrises' claim that the Alabama Extended Manufacturer's Liability Doctrine should be applied to this case is rejected.
For the foregoing reasons, the judgment is due to be, and it hereby is, affirmed.
AFFIRMED.
MADDOX, HOUSTON, STEAGALL and INGRAM, JJ., concur.
[1] The fact that the lot purchased by the Morrises had previously been a dump site was a matter of public record, because it was disclosed on the subdivision site plan filed with the Decatur City Planning Commission.