William Gaulden and Evelyn Gaulden appeal from the trial court's summary judgments for (1) Stephen P. Mitchell; (2) Gary Lucas and Diane Lucas; (3) James Heslop and Laura Heslop; and (4) Jill Dunn, Kristi Bell, Pat Berry, and First Real Estate (hereinafter collectively referred to as "the real-estate defendants") (all these defendants hereinafter sometimes collectively referred to as "the defendants"). We affirm.
The trial court succinctly set out the facts underlying this action as follows:
 "This matter arises out of a creative financing arrangement by and between the [d]efendants, and the subsequent purchase of a used residence by [the Gauldens]. At the time of the closing of the home, [Mitchell] owned the property, but had never lived in the home. [The Lucases], the prior owners and residents of the home, had sold the house to . . . Mitchell to enable the Lucases to qualify for and to purchase another home from [the Heslops], who subsequently bought a home in Greystone. Mitchell allowed the Lucases and the Heslops to draw from his credit line to pay off the Lucas mortgage and to provide the financing. The proceeds from the sale of the home at issue . . . were to then be used to pay off the credit line draw by Mitchell. At closing, [Laura] Heslop signed the deed *Page 194 
by Power of Attorney from Mitchell, conveying his interest to the Gauldens."
Additionally, a "seller's property disclosure" was completed prior to closing, which stated, in pertinent part, (1) that the home's roof was three years old; (2) that there were no moisture or water problems in the basement; (3) that the home's septic tank was working; (4) that the seller had no knowledge of damage caused by termites, dry rot, pests or rodents; and (5) that there was no damage caused by wind, fire, or flood.
At closing, a sales contract was signed by the Gauldens and by Laura Heslop, on behalf of Mitchell. The contract stated, in pertinent part:
 "9. CONDITION OF THE PROPERTY: NEITHER SELLER NOR ANY AGENT MAKES ANY REPRESENTATIONS OR WARRANTIES REGARDING CONDITION OF THE PROPERTY EXCEPT TO THE EXTENT EXPRESSLY SET FORTH HEREIN. Purchaser has the obligation to determine any and all conditions of the Property material to Purchaser's decision to buy the Property, including, without limitation, the condition of the heating, cooling, plumbing and electrical systems and any built-in appliances, and the roof and the basement, including leaks therein; the size and area of the Property; construction materials, including floors; structural condition; utility and sewer or septic tank availability and condition; subsurface condition, including radon and other potentially hazardous materials and/or gases; and any matters affecting the character of the neighborhood. Purchaser shall have the opportunity to determine the condition of the Property in accordance with `A,' `B,' or `C' below, as selected by the parties. . . .
". . . .
 "B. Purchaser has inspected the Property, either personally or through others of Purchaser's choosing, and, without relying on any representation or warranty from Seller or Broker or any salesperson or any printed or written description of the Property, accepts the property in its present `as is' condition, including ordinary wear and tear to closing . . . . [Initialed by the Gauldens]
". . . .
 "Purchaser has the right and responsibility to walk through and inspect the Property prior to closing and notify seller immediately if the Property is not in the condition agreed under `A,' `B,' or `C' above, whichever one has been selected by the parties. After closing, all conditions of the property are the responsibility of Purchaser.
". . . .
 "19. ENTIRE AGREEMENT. This Contract constitutes the entire agreement between Purchaser and Seller regarding the Property, and supercedes all prior discussion, negotiations and agreements between Purchaser and Seller, whether oral or written. Neither Purchaser, Seller, nor Broker or any sales agent shall be bound by any understanding, agreement, promise, or representation concerning the Property, expressed or implied, not specified herein."
On February 25, 1998, the Gauldens sued Mitchell, seeking compensatory and punitive damages on claims of misrepresentation, fraud, and negligence. They contend that they relied on the representations in the seller's property disclosure concerning the home's roof and basement, which, they say, were false. On June 23, 1998, the Gauldens amended their complaint to include the Lucases, the Heslops, and the real-estate defendants and to add additional counts alleging conspiracy as to the defendants and negligence as to Jill *Page 195 
Dunn and First Real Estate. On August 28, 1998, the Gauldens filed a second amended complaint to replace their conspiracy and negligence counts from the first amendment to their compliant with counts alleging (1) negligence against the Lucases, the Heslops, and the real-estate defendants; (2) suppression and misrepresentation against Mitchell, the Heslops, Berry, Bell, and Dunn, alleging that, in addition to false information regarding the home's roof and basement, they were also given false information concerning the septic tank's being in working order, the lack of knowledge of damage caused by termites, dry rot, pests, or rodents, and damage caused by wind, fire, or flood; and (3) negligence against First Real Estate, based upon the doctrine of respondeat superior for the alleged negligence of its employees.
On October 27, 2000, Mitchell, the Lucases, and the real-estate defendants all filed separate motions for a summary judgment. On October 30, 2000, the Heslops also filed a motion for a summary judgment. On September 19, 2001, the Gauldens filed a single opposition to the defendants' summary-judgment motions; only the real-estate defendants filed a reply to the opposition. On January 2, 2002, the trial court entered an order stating, in pertinent part:
"CLAIMS AGAINST DEFENDANT LUCASES
 "First, the plaintiffs contend that these Defendants, the prior owners of the house, were somehow negligent in their handling of this sale. The evidence clearly establishes that the Lucases did not own the home at the time of the sale. Notwithstanding the fact that the Lucases had conveyed their interest in the home prior to the sale to the plaintiffs, the sale of a used home in Alabama is still governed by the doctrine of caveat emptor, and there is no implied warranty of habitability. Boakle v. Bedwell Construction Co., Inc., 770 So.2d 1076 (Ala. 2000). Specifically, the plaintiffs' main allegation against these defendants is that they failed to disclose certain information about the residence. Since no fiduciary relationship existed between these parties, these defendants were under no duty to disclose anything. Further, the plaintiffs testified that they had no conversations with the Lucases prior to the sale, and there is no evidence before the court that these defendants misrepresented anything to the plaintiffs. Accordingly, the Lucases are entitled to a judgment as a matter of law.
"CLAIMS AGAINST DEFENDANT MITCHELL
 "Defendant Mitchell acquired the home from the Lucases on December 27, 1995. Mitchell did not reside in the home at any time prior to the sale to the plaintiffs, and in fact, had never even seen the property. At the closing on February 18, 1996, Mitchell conveyed his interest to the Gauldens via a Limited Power of Attorney issued to Defendant Laura Heslop.
 "The plaintiffs contend that the various defendants misrepresented or suppressed, among other things, the existence of a septic tank, the presence of termites in a shed under the deck, the age of the roof, and water problems in the basement. In a claim for fraudulent suppression, the plaintiff must show: (1) that the defendant had a duty to disclose a material fact; (2) that the defendant concealed or failed to disclose that fact; (3) that the concealment induced the plaintiff to act; and (4) that the defendant's actions resulted in harm to the plaintiff. Bethel v. Thorn, 757 So.2d 1154 (Ala. 1999). Fraudulent misrepresentation, *Page 196 
on the other hand, requires proof: (1) that the defendant made a false representation; (2) of a material existing fact; (3) on which the plaintiff reasonably relied; and (4) which proximately caused damage to the plaintiff. Id.
 "The general rule in Alabama is well established that sellers of used property have no duty to disclose any defect to a purchaser. Boswell v. Coker, 519 So.2d 493
(Ala. 1987). However, Section 6-5-102, Code of Alabama 1975, provides several exceptions to this general rule. With regard to a seller or a seller's agent's duty to disclose defects in a used home, the Supreme Court of Alabama has stated:
 "`In Alabama the seller of used residential real estate generally has no duty to volunteer knowledge; however, when a direct inquiry is made of him or her, the seller has a duty to respond honestly. However, if the seller, or the seller's agent, is questioned directly about specific defects, or if the seller or the agent has knowledge of specific defects that affected health or safety and the defect is not known to or hreadily observable by the buyer, the seller or the agent has a duty to disclose and is liable for damages for nondisclosure.'
 "Roberts v. CS Sovran Credit Corp., 621 So.2d 1294, 1297 (Ala. 1993) (citations omitted).
 "The plaintiffs have failed to present any evidence of any misrepresentations made by Defendant Mitchell, as well as any evidence tending to show a specific, direct inquiry, or that a fiduciary relationship existed between the parties. Rather, the Gauldens testified in their depositions that they were in fact aware of the existence of the septic tank prior to closing, that they were unsure of the age of the roof, and that they were aware of the termite damage in the storage shed under the deck. Regarding the alleged water flooding that the plaintiffs contend the seller had a duty to disclose, despite no specific inquiry, because they say it involved a health concern, there is simply no evidence before the court to indicate that this defendant had knowledge and failed to disclose it to the plaintiffs. Accordingly, Defendant Mitchell is entitled to a judgment as a matter of law on all claims against him.
"CLAIMS AGAINST DEFENDANT HESLOPS
 "The plaintiffs' allegations against these defendants include breach of contract, negligence, misrepresentation, suppression, and conspiracy.[1] The evidence presented to the court in support of the motion indicates that the Heslops did not have any conversations with the plaintiffs prior to the closing, and that their role in this transaction was limited to the fact that Laura Heslop signed the deed to the plaintiffs to transfer Mitchell's interest pursuant to the Power of Attorney, and that the Heslops were able to purchase a different home after the Lucases purchased theirs. The plaintiffs testified that they had no conversations with the Heslops and there is no evidence that there was a contract of any kind between these parties. Further, there is no evidence to support a contention that these defendants owed any duty whatsoever to the plaintiffs which could conceivably give rise to a negligence or suppression claim, nor is there any evidence of any representations made by these defendants that would support a fraudulent misrepresentation *Page 197 
claim. They are neither the seller nor the seller's agent, and therefore owed no duty to disclose any defects. Roberts, supra. Accordingly, the Heslops are entitled to a judgment as a matter of law.
"CLAIMS AGAINST THE REAL ESTATE AGENTS
 "The Gauldens testified that they had not had any conversations with Defendant Pat Berry or Defendant Kristie Bell prior to the closing, and that no representations were made to them by these defendants. The evidence indicates that Defendant Jill Dunn . . . was a `seller's agent,' and the plaintiffs testified in their deposition that no direct representations were made to them by Dunn. The record evidence also contains the Property Disclosure Form which indicates that the property had a septic tank, that the roof was three years old, that there was no termite damage to the home itself, and that there was no knowledge of any moisture or flooding problems by the agents.
 "As stated previously, the plaintiffs testified in their depositions that they were aware of the presence of the septic tank before closing, that they were unsure of the age of the roof, and that they were aware of the presence of the termites under the deck before closing. Additionally, the Gauldens have failed to present any evidence in opposition to the pending motion that any of the real estate agent defendants had knowledge of any moisture problems in the basement, which would affect their health or safety, and failed to disclose them. Moreover, in the Sales Contract itself, the plaintiffs acknowledged purchasing the property `as is,' and that they had not relied on any advice or representation from any agents of First Real Estate.
 "Generally, an agent will not be held liable for fraud for merely relaying information concerning the condition of a home, without proof that there was knowledge that the statement was false. Nolan v. Melton, 740 So.2d 1096 (Ala.Civ.App. 1999). Additionally, as previously noted, there is simply no duty on the listing or selling agent of a used residence to volunteer any knowledge unless it involves a specific defect affecting health or safety; however, the agent must respond honestly to direct inquiries. Roberts, supra. In this case, the specific inquiry exception would not be applicable because the plaintiffs testified that they did not make any specific inquiries regarding the condition of the house to any of the Defendant agents, nor is there any evidence that the defendant agents had any knowledge of any specific defects affecting health or safety that were not readily observable to the plaintiffs. Id. Moreover, there is no duty owed by an agent to a purchaser to disclose a latent defect of which the agent is unaware. Cato v. Lowder Realty Co., 630 So.2d 378 (Ala. 1993). Also, the fact that the plaintiffs executed `as is' statements disclaiming any reliance on warranties or representations by these agents undermines their reliance and fraud contentions. Haygood v. Pounders Realty, Inc., 571 So.2d 1086 (Ala. 1990). In Rutenberg Homes, Inc. v. Norris, [804 So.2d 180] (Ala. 2001), the Alabama Supreme Court has recently held that the plaintiffs in that case could not have justifiably[1] relied on the seller's representations when the language in the contract clearly absolved the defendants of liability, and where the plaintiffs were capable of reading and understanding the contract.
". . . . *Page 198 
"___________________
 "[1] [The events in this case occurred] before Foremost Insurance Company v. Parham, 693 So.2d 409
(Ala. 1997), wherein the Court readopted the `reasonable' reliance standard for judging a fraud claim. Justifiable reliance on the defendant's representation, a lesser burden to prove by the plaintiff, is not present where the representation is `one so patently and obviously false that he must have closed his eyes to avoid the discovery of the truth.' Id. at [418 (quoting Johnson v. State Farm Ins. Co., 587 So.2d 974, 977-79 (Ala. 1991), in turn quoting Southern States Ford v. Proctor, 541 So.2d 1081, 1091-92 (Ala. 1989) (Hornsby, C.J., concurring specially)).]"
On February 13, 2002, the Gauldens filed a notice of appeal to the Alabama Supreme Court. On March 27, 2002, this case was transferred to this court by the supreme court, pursuant to § 12-2-7(6), Ala. Code 1975. On appeal, the Gauldens argue that the trial court erred in entering summary judgments for the defendants because, they say, there were disputed issues of material fact and the defendants were not entitled to judgments as a matter of law. Our review of a summary judgment is de novo.
 "In reviewing the disposition of a motion for summary judgment, `we utilize the same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of material fact,' Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala. 1988), and whether the movant was `entitled to a judgment as a matter of law.' Wright v. Wright, 654 So.2d 542 (Ala. 1995); Rule 56(c), Ala. R.Civ.P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). Evidence is `substantial' if it is of `such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' Wright, 654 So.2d at 543 (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989)). Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Wilma Corp. v. Fleming Foods of Alabama, Inc., 613 So.2d 359 (Ala. 1993); Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala. 1990)."
Hobson v. American Cast Iron Pipe Co., 690 So.2d 341, 344 (Ala. 1997).
 I. The Lucases
Viewed in a light most favorable to the Gauldens, the evidence tends to show the following. Diane Lucas provided the information contained in the seller's property disclosure, which was confirmed by her during a telephone conversation with Laura Heslop. Laura Heslop then signed the document on behalf of Mitchell. Diane Lucas was also involved in the sale of the home in that she engaged the services of the real-estate defendants and was contacted by them concerning whether she wanted to accept the purchase price offered by the Gauldens. Affidavit testimony by a neighboring homeowner stated that the basement had flooded while the Lucases lived in the home and affidavit testimony by a roofing company employee stated that, in his opinion, the roof on the home was 12 to 15 years old. Information concerning the home's septic tank and termite damage was disclosed to the Gauldens before they closed on the home.
In the sales contract, as well as the seller's property disclosure, the seller was identified as Mitchell, not the Lucases. However, even viewing the evidence in a light most favorable to the Gauldens, considering that the Lucases had a duty to the *Page 199 
Gauldens because of the arrangement that existed between them, the Heslops, and Mitchell, we conclude that the trial court's judgment is due to be affirmed. Our supreme court has stated:
 "Although Alabama retains the caveat emptor rule with regard to the resale of used residential real estate (Ray v. Montgomery, 399 So.2d 230 (Ala. 1980)), it is not applicable, under certain circumstances, when the purchaser of a used house inquires directly (either of the seller or of the seller's agent), prior to closing, about a material defect or condition of the home."
Fennell Realty Co. v. Martin, 529 So.2d 1003, 1005 (Ala. 1988).
The Gauldens testified that they never had any contact with the Lucases during this transaction. While the Gauldens argue in their brief to this court that they made a direct inquiry based upon the seller's property disclosure, they undermine their own argument by conceding that that document was not provided as a result of a direct inquiry by them, but was made available to all potential purchasers. The Gauldens also personally inspected the home and chose not to have it professionally inspected. Furthermore, the Gauldens indicated, by initialing the "as is" clause and signing the sales contract, that they had not relied on any representation made by the seller or by a salesperson, or on any written or printed description, in purchasing the home. In a similar case, our supreme court held that the buyers' signing similar documents stating they had not relied on representations supported the summary judgment for a realty company. Haygood v. Burl Pounders Realty, Inc., 571 So.2d 1086
(Ala. 1990).
 II. Mitchell
As stated previously, Mitchell was identified as the seller in both the seller's property disclosure and the sales contract. Laura Heslop signed both documents on behalf of Mitchell. The plaintiffs failed to show that they made any direct inquiry to Mitchell before their closing on the property, Fennell Realty Co., supra; rather, the affidavit testimony of Evelyn Gaulden was that they had informed Jill Dunn that they needed a home with a finished livable ground level. This was not a direct inquiry to Mitchell concerning the basement. Further, the Gauldens disclaimed any reliance on any representations made by Mitchell by initialing the "as is" clause and by signing the sales contract, Haygood, supra. The trial court's summary judgment as to Mitchell is therefore due to be affirmed.
 III. The Heslops
Our review of the record confirms the trial court's finding that there was no evidence to support that the Heslops made any representations to the Gauldens concerning the condition of the home. Further, there is no evidence that the Gauldens made any direct inquiries of the Heslops concerning the home. Fennell Realty Co., supra. No communication took place between the Heslops and the Gauldens. Accordingly, the trial court's summary judgment for the Heslops is due to be affirmed.
 IV. The Real-Estate Defendants
The Gauldens failed to present any evidence that they made any direct inquiries of the real-estate defendants about the home's condition.Fennell Realty Co., supra. They also disaffirmed any reliance on any representations that may have been made by the real-estate defendants,Haygood, supra, and the trial court's summary judgment for the real-estate defendants is also due to be affirmed. *Page 200 
 V. Conclusion
Based on the foregoing, the summary judgments for the defendants are due to be affirmed.
AFFIRMED.
Yates, P.J., and Thompson and Pittman, JJ., concur.
Murdock, J., concurs in part and dissents in part.
[1] The Gauldens, in their second amended complaint, dropped the claim of conspiracy.