Clay Kilgore Construction, Inc. ("Kilgore"), appeals from a summary judgment for Buchalter/Grant, L.L.C., and Buchalter II, Inc. (hereinafter referred to collectively as "Buchalter"), on Kilgore's cross-claims alleging fraud and suppression against Buchalter, in actions commenced against Kilgore and Buchalter by purchasers of homes constructed by Kilgore in the Southland Estates ("Southland"), a 40-lot subdivision developed by Buchalter. We affirm.
 I. Factual Background
The events underlying this dispute began when Buchalter purchased 19 acres in Tuscaloosa County in order to plat and develop Southland. In connection with the development of Southland, Buchalter engaged the engineering services of Apodaca-Gardiner Engineering, Inc. ("Apodaca"). According to the affidavit of Victor Apodaca, a former co-owner of that company, Apodaca informed Buchalter "that soils and soil conditions in [the proposed subdivision] were not very good and that there would be difficulties in implementing on-site sewage disposal systems." (Emphasis added.) Three officials of the Tuscaloosa County Health Department ("the health department") made a preliminary investigation of, and performed soil tests at, Southland in June 1996. Their opinion reiterated Apodaca's opinion of the soil condition and was relayed to Apodaca.
Buchalter submitted to the health department a "preliminary subdivision report" ("the preliminary report") on August 27, 1996, and a "final subdivision report" ("the final report") on October 17, 1996. In connection with those reports, Buchalter submitted to the health department information purporting to be the results of soil tests Apodaca had conducted at Southland, including "percolation" tests and "soil borings." Health department supervisor Gregory Utley reinspected Southland on two occasions in connection with the final report. On the basis of Utley's inspections and the information supplied by Buchalter, the health department approved the final report in November 1996.
In December 1996, Kilgore, through its president, Clay Kilgore, began negotiating with Robert Buchalter[2] for the purchase of lots in Southland. Mr. Kilgore testified by deposition that he asked Mr. Buchalter "what kind of [sewage] systems [the residents] would be using," and was told "there would be septic tanks or septic systems and it had been approved by the health department." According to Mr. Kilgore, Mr. Buchalter's response "basically led us to believe that we were dealing withconventional sewage disposal systems." *Page 895 
(Emphasis added.)[3] Mr. Kilgore also testified that a health department official had told him, in answer to his inquiry, that the lots were "acceptable" for "conventional [septic] systems."
On December 28, 1996, Mr. Kilgore, on behalf of Kilgore, signed a contract for the purchase of lots 5, 26, 29, and 35. The contract provided, in pertinent part: "PURCHASER accepts property in `AS IS' condition."
Kilgore received warranty deeds for its purchase in 1997. At that time, some utility services, such as water, electricity, telephone, and cable television, had been installed up to the front of the lots. Moreover, the lots had been cleared and leveled and were serviced by a paved street with curbs and gutters. However, there were no structures on the lots. Subsequently, Kilgore constructed houses on lots 5 and 26, installing conventional septic-sewage systems.
On September 15, 1998, and March 11, 1999, Kilgore sold the houses on lots 26 and 5, respectively. The house on lot 5 was purchased by Michael Poe and Tracey Poe. The house on lot 26 was purchased by Joseph Carter and Teresa Carter. Soon after these transactions, the septic-sewage systems on both properties failed. The cause of the failures was ultimately attributed to the unsuitability of the soil on lots 5 and 26 for conventional septic-sewage disposal.
On July 24, 2000, the Poes sued Buchalter and Kilgore (case no. CV-00-929). On January 22, 2001, the Carters sued Buchalter and Kilgore (case no. CV-01-89). Discovery in the cases produced evidence of discrepancies between the soil tests submitted to the health department by Buchalter in connection with the final report, on the one hand, and soil tests conducted by the health department, both before and after that report, on the other.
On September 24, 2002, Kilgore filed cross-claims against Buchalter in both cases, alleging fraud and fraudulent suppression. More specifically, Kilgore alleged that "[p]rior to and following the purchase of [the lots] . . ., it was assured that the property would be serviced by conventional septic systems," and that Buchalter "owed a duty to disclose, but instead suppressed," the fact that "subsoil conditions would not support conventional septic systems." Kilgore sought compensatory and punitive damages; it also sought "complete and full indemnity for all costs and expenses arising" from any judgment that might be entered against it in favor of the Carters and/or the Poes.
Buchalter moved for summary judgments as to the claims of the Carters and the Poes and as to the cross-claims of Kilgore. The trial court entered summary judgments for Buchalter and certified the judgments as final, pursuant to Ala. R. Civ. P. 54(b). In identical judgments disposing of the cross-claims in both cases, the trial court stated, in pertinent part:
 "At the time of [Kilgore's purchase of the lots], no house was on the land. Pursuant to DeAravjo v. Walker, 589 So.2d 1292 (Ala. 1991), such a sale falls within the doctrine of caveat emptor
which bars [Kilgore's] claims. The court . . . finds that [Buchalter] explicitly disclaimed any duty by selling the land `as is' to a builder in an arm's length commercial transaction. In light of the nature of the sale, the court finds that *Page 896 
summary judgment is due to be granted on all claims asserted by [Kilgore]."
(Emphasis added.)
The Carters, Poes, and Kilgore appealed. This Court affirmed the judgments in the appeals of the Carters and the Poes, without an opinion. Carter v. Buchalter/Grant, L.L.C.
(No. 1031088, October 14, 2005), ___ So.2d ___ (Ala. 2005) (table), and Poe v. Buchalter/Grant, L.L.C. (No. 1031090, October 14, 2005), ___ So.2d ___ (Ala. 2005) (table). We consolidated Kilgore's appeals as to its cross-claims for the purpose of writing one opinion. Case no. 1031086 represents the appeal from the summary judgment for Buchalter in the Carters' action; case no. 1031087 represents the appeal from the summary judgment for Buchalter in the Poes' action.
"Summary judgment is appropriate only when `there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" Perry v. Cityof Birmingham, 906 So.2d 174, 175 (Ala. 2005) (quoting Ala. R. Civ. P. 56(c)(3), and citing Dobbs v. Shelby County Econ. Indus. Dev. Auth., 749 So.2d 425 (Ala. 1999)). "The court must accept the tendencies of the evidence most favorable to the nonmoving party and must resolve all reasonable factual doubts in favor of the nonmoving party. . . . In reviewing a summary judgment, an appellate court, de novo, applies the same standard as the trial court." Perry,906 So.2d at 175.
 II. Fraud and Suppression
Kilgore's theory of the case is that it was induced by fraud and/or fraudulent suppression to purchase lots in Southland on the false premise that the soil beneath the lots was suitable for the use of conventional septic-sewage systems. More specifically, Kilgore says it purchased the lots on the basis of a misrepresentation by Buchalter that the residences constructed on the lots would be on conventional septic tanks and on the basis of the health department's representation that the lots were "acceptable" for "conventional [septic] systems." Kilgore also insists that Buchalter deceived the health department as to modifications to the soil Buchalter allegedly made between Buchalter's submission of the preliminary report and the final report in order to acquire the health department's approval of the final report. Kilgore contends that Buchalter's representations to the health department, on which Kilgore also allegedly relied, were based on the allegedly inaccurate soil tests Buchalter provided the health department. In the alternative, Kilgore argues that Buchalter suppressed information known to Buchalter that the soil beneath Southland was unsuitable to the use of conventional septic-sewage systems.
According to Kilgore, the trial court erroneously held that the "as is" nature of the sale of the lots precluded Kilgore's fraud and suppression claims. Buchalter, on the other hand, essentially argues that "the `as is' language of the contract," in conjunction with "the doctrine of caveat emptor,"
bars Kilgore's recovery on the fraud and suppression claims. Buchalter's brief, at 61. The dispositive issue, therefore, involves the interplay between the doctrine of caveatemptor and the "as is" clause in the contract.
Although this Court "has abrogated the rule of caveatemptor in the sale of a new house," the doctrine "still applies to the sale of a `used' house." Nesbitt v.Frederick, 941 So.2d 950, 956 (Ala. 2006); see Moore v.Prudential Residential Servs. Ltd. P'ship, 849 So.2d 914,923 (Ala. 2002). The rule also still applies to the "purchase ofunimproved land." DeAravjo v. Walker,589 So.2d 1292, 1293 (Ala. *Page 897 
1991) (emphasis added); see Morris v. Strickling,579 So.2d 609 (Ala. 1991).
DeAravjo involved an action by Frances and Jose DeAravjo against Harold Walker, a real-estate developer, arising out of Walker's sale of a vacant lot on which a house was eventually built and purchased by the DeAravjos.589 So.2d at 1293. This Court affirmed a summary judgment for Walker on the ground that caveat emptor applied to the purchase of unimproved property. Id.
Kilgore attempts to distinguish DeAravjo, apparently on the theory that this case involves utilities installations that were not involved in DeAravjo. The vacant lot in that case had been modified before the sale by the installation of a "drainage system" and curbs and gutters. Id. In this case, some utilities lines had been brought up to the lots before the sale. Indeed, Kilgore contends that these lots — unlike the lot in DeAravjo — were, in fact, "improved."
This Court has previously rejected similar arguments. InDeAravjo, for example, we said:
 "We reaffirm our recent holding in Morris v. Strickling, 579 So.2d 609 (Ala. 1991), that the doctrine of caveat emptor applies with regard to the purchase of unimproved land:
 "`The Morrises argue that the exception to the caveat emptor rule as stated in Cochran v. Keeton, 287 Ala. 439, 252 So.2d 313, 314
(1971) (holding that the rule caveat emptor
would no longer be applicable to the sale of a newly constructed house, and recognizing an implied warranty of fitness and habitability with regard to such sales), should be extended to situations, such as the one at bar, involving the purchase of an unimproved piece of property. We disagree.
 "`The Court of Civil Appeals has addressed the purchase of real estate as follows:
 "`"Furthermore, while Alabama courts recognize the implied warranty of fitness and habitability for the purpose purchased [sic] in newly constructed homes, we know of no such implied warranty extending to the purchase of lands. The physical condition of the premises has fallen under the rule of caveat emptor. See Cochran v. Keeton, 287 Ala. 439, 252 So.2d 313 (1971); 77 Am.Jur.2d Vendor and Purchaser § 329."
 "`Scott v. Gill, 352 So.2d 1143, 1145
(Ala.Civ.App. 1977). While the Morrises argue that the Scott case dealt with "raw, vacant and unimproved land" as opposed to land improved for the purpose of building houses, we are unwilling to extend the Cochran exception to land with no dwelling, because we are of the opinion that the dispositive question would then become the often difficult question of whether a particular parcel is "improved" or "unimproved" and, if "improved," then for what purpose.'"
589 So.2d at 1293-94 (emphasis added).
Under the principle stated in Morris and reiterated inDeAravjo, "unimproved" property simply means "land with no dwelling." It is undisputed that the property Kilgore purchased was "land with no dwelling." Consequently, caveatemptor applies to Kilgore's purchase of lots 5 and 26.
Under a growing body of Alabama caselaw involving circumstances in which the rule of caveat emptor is applicable, a fraud or fraudulent-suppression claim is foreclosed by a clause in a purchase contract providing that the purchaser of real property accepts the property "as is." Moore *Page 898 v. Prudential Residential Servs., 849 So.2d at 923;Leatherwood, Inc. v. Baker, 619 So.2d 1273, 1274
(Ala. 1992); Haygood v. Burl Pounders Realty, Inc.,571 So.2d 1086, 1089 (Ala. 1990); and Massey v. Weeks RealtyCo., 511 So.2d 171 (Ala. 1987). This is so, because an "as is" clause negates the element of reliance essential to any claim of fraud and/or fraudulent suppression. Haygood,571 So.2d at 1089; Massey, 511 So.2d at 173; andGaulden v. Mitchell 849 So.2d 192, 199 (Ala.Civ.App. 2002).
Kilgore does not cite any of those cases, and it does not ask us to overrule that line of authority. Even if we would be amenable to such a request, we are not inclined to abandon precedent without a specific invitation to do so. "Stare decisis commands, at a minimum, a degree of respect from this Court that makes it disinclined to overrule controlling precedent when it is not invited to do so." Moore, 849 So.2d at 926.
Kilgore purchased the lots in this case as unimproved property, subject to an "as is" clause in the purchase contract. UnderMassey and its progeny, its fraud and suppression claims are precluded. The trial court did not err, therefore, in entering summary judgments on those claims.
 III. Indemnity
Kilgore contends that "[a] genuine issue of material fact exists as to [Kilgore's] claim for indemnity." Kilgore's brief, at 37 (case no. 1031087). However, its discussion of this issue is cursory at best. It cites only one case, Sherman ConcretePipe Machinery, Inc. v. Gadsden Concrete Metal PipeCo., 335 So.2d 125 (Ala. 1976), and does so only for the general, unremarkable principle that "exceptions exist as to the general rule that prohibits contribution among alleged joint tortfeasors." Kilgore's brief, at 37 (case no. 1031087).
This Court has recently said:
 "Rule 28(a)(10), Ala. R.App. P., requires the appellant to cite relevant authority in support of its arguments. This is so, because `"it is neither our duty nor function to perform all the legal research for an appellant."' Henderson v. Alabama A M Univ., 483 So.2d 392, 392 (Ala. 1986) (quoting Gibson v. Nix, 460 So.2d 1346, 1347
(Ala.Civ.App. 1984)). `Nor is it the function of the appellate courts to "make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument."' Pileri Indus., Inc. v. Consolidated Indus., Inc., 740 So.2d 1108, 1110 (Ala.Civ.App. 1999) (quoting Dykes v. Lane Trucking, Inc., 652 So.2d 248, 251 (Ala. 1994)). Authority supporting only `general propositions of law' does not constitute a sufficient argument for reversal. Geisenhoff v. Geisenhoff, 693 So.2d 489, 491 (Ala.Civ.App. 1997)."
Beachcroft Props., LLP v. City of Alabaster,901 So.2d 703, 708 (Ala. 2004) (emphasis added).
Kilgore's single citation to a general principle of law without specific relevance to this case does not satisfy Ala. R.App. P. 28(a)(10). Therefore, we do not address the indemnity issue.
 IV. Summary
In short, the trial court did not err in entering summary judgments for Buchalter in these cases. Consequently, those judgments are affirmed.
1031086 — AFFIRMED.
1031087 — AFFIRMED.
NABERS, C.J., and LYONS, SMITH, and PARKER, JJ., concur.
[2] Robert Buchalter is the president of Buchalter II, Inc.
[3] The parties and witnesses in this case distinguish "conventional" septic systems from "engineered" septic systems, which are significantly more expensive than conventional systems. *Page 899