On Application for Rehearing.
The opinion of June 29, 2007, is withdrawn, and the following is substituted therefor.
The defendants, ERA Class.Com, Inc. ("ERA"), and Robert Mikkelsen, appeal from the denial of their postjudgment motions seeking a judgment as a matter of law ("JML") or, in the alternative, a new trial. We reverse and remand with instructions.
The plaintiffs, Charles David Stoddard ("Dr. Stoddard") and Rita Stoddard ("Mrs. *Page 1131 
Stoddard"), sued ERA and Mikkelsen in June 2004. The Stoddards alleged that Mikkelsen, a real-estate agent with ERA, had listed a parcel of property in Gulf Shores owned by Mildred Casey ("the Casey property") for sale as commercial property; that Mikkelsen had placed a for-sale sign on the Casey property describing it as commercial property; that the Stoddards, relying on Mikkelsen's description of the Casey property as commercial property, had purchased the Casey property in order to build a dentist's office for Dr. Stoddard, who is a dentist; that, when the Stoddards subsequently submitted their site-plan application to the city, they were informed for the first time that the Casey property was zoned for residential use only and, therefore, could not be used for a dentist's office without rezoning; and that, although the Casey property was subsequently rezoned for commercial use, the Stoddards nonetheless sustained damage because the rezoning process delayed their use of the Casey property. Based on those allegations, the Stoddards asserted claims of negligence, wantonness, fraud, and suppression.
Answering, Mikkelsen and ERA denied that they were liable to the Stoddards. Thereafter, the case proceeded to trial before a jury. At the close of the evidence, Mikkelsen and ERA moved the trial court for a JML on the grounds, among others, that the Stoddards' claims were barred by the doctrine of caveatemptor and that, even if they were not barred by the doctrine of caveat emptor, they were barred by the Stoddards' signing an "as is" sales contract to purchase used real estate. The trial court denied that motion, charged the jury regarding the Stoddards' claims of negligence, wantonness, fraud, and suppression, and submitted those claims to the jury. The jury returned a general verdict in favor of the Stoddards and awarded them compensatory damages in the amount of $85,000. Thereafter, the trial court entered a judgment on the jury verdict. Mikkelsen and ERA then renewed their motion for a JML and filed an alternative motion for a new trial. Those motions were denied by operation of law pursuant to Rule 59.1, Ala. R. Civ. P. Mikkelsen and ERA then timely appealed to the supreme court, and the supreme court transferred the appeal to this court pursuant to § 12-2-7(6), Ala. Code 1975.
On appeal, Mikkelsen and ERA first argue that the trial court erred in denying their renewed motion for a JML because, they say, (1) the Stoddards' claims were barred by the doctrine ofcaveat emptor and (2) even if the Stoddards' claims were not barred by the doctrine of caveat emptor, they were barred by the Stoddards' signing an "as is" sales contract to purchase used real estate. In reviewing the denial of a motion for a JML, "we are bound to view the evidence in a light most favorable to the nonmovant." Kmart Corp. v.Kyles, 723 So.2d 572, 573 (Ala. 1998). Viewed in that manner, the evidence at trial established the following material facts.
In May 2002, the Stoddards engaged real-estate agent Gena Price to assist them in finding a parcel of real estate on which they could build a dental office for Dr. Stoddard. On June 20, 2002, Casey's attorney in fact engaged Mikkelsen to list the Casey property for sale. The Casey property had a used building located on it and consisted of two adjacent lots. Both lots were zoned for residential use only. The master zoning map adopted by the City of Gulf Shores, which was kept in the office of the city's zoning administrator, Frank Breaux, accurately indicated that both lots were zoned for residential use only; however, the zoning map that the city made available to the public erroneously indicated that both lots were zoned *Page 1132 
for mixed use, a zoning classification that allowed property to be used for both residential and commercial uses.
The same day he was engaged to list the Casey property for sale, Mikkelsen called the Gulf Shores Planning Commission ("the Commission") and inquired regarding the zoning classification of the Casey property. Sherry Smith, the Commission's secretary, told Mikkelsen that the Casey property was zoned for commercial use. Mikkelsen then listed the Casey property in the Multiple Listing Service ("the MLS") used by real-estate agents, put a for-sale sign on the Casey property, and arranged to advertise that the Casey property was for sale in a local newspaper. The MLS listing, the for-sale sign, and the newspaper advertisement all indicated that the Casey property was commercial property.
On June 25 2002, Mikkelsen called the Commission a second time to double check the zoning of the Casey property. This time, Sherry Smith told Mikkelsen that one of the lots was zoned for residential use only and the other was zoned for mixed use. However, Mikkelsen did not make any changes to the MLS listing, the for-sale sign, or the newspaper advertisement as a result of the information he received from Sherry Smith on June 25.
On July 27, 2002, Mrs. Stoddard saw the for-sale sign on the Casey property as she was driving by. That same day, the Stoddards toured the existing used building on the Casey property.
On July 28, 2002, the Stoddards made a written offer to purchase the Casey property for a purchase price of $90,000. The offer also stated that "[p]urchaser intends to tear down existing structure; therefore offer is contingent upon purchaser obtaining all necessary approval from City of Gulf Shores to construct planned building and associated parking, utilities, etc." Casey's attorney in fact rejected the July 28 offer.
Following the rejection of the July 28 offer and before the Stoddards made another offer to purchase the Casey property, Gena Price, the agent representing the Stoddards, called Frank Breaux, the zoning administrator, to verify that the Casey property was zoned for commercial use. Breaux told Price that the Casey property was indeed zoned for commercial use. Price then told Dr. Stoddard that Breaux had confirmed that the Casey property was zoned for commercial use. Thereafter, the Stoddards instructed Price to prepare another written offer to purchase the Casey property. The Stoddards instructed Price to delete the provision making the offer contingent on the Stoddards' obtaining approval from the city to build a new building on the Casey property and to increase the purchase price to $103,500. Price delivered this second written offer to Mikkelsen on August 2, 2002. Casey's attorney in fact wrote a counteroffer on the Stoddards' August 2 offer. The counteroffer stated:
 "The above offer is accepted at price of $106,500 — `AS IS.' No termite bond, guarantee on electrical, heating cooling, etc. `AS IS.' NO survey."
(Emphasis added.) The Stoddards accepted the counteroffer, and the parties closed the sale on September 4, 2002.
On November 2, 2002, Dr. Stoddard went to city hall to file his site plan for the Casey property and met with Breaux. During this meeting, Breaux consulted the master zoning map and informed Dr. Stoddard that the Casey property was zoned for residential use only. Because of the error in the zoning map that was available to the public, Breaux stated that the city would seek to rezone the Casey property to allow commercial use of it and that the *Page 1133 
city would expedite the rezoning. The city completed the rezoning process on May 10, 2003.
In Moore v. Prudential Residential Services LimitedPartnership, 849 So.2d 914 (Ala. 2002), the supreme court stated:
 "Although Alabama has abrogated the rule of caveat emptor in the sale of new real estate, that rule still applies in the sale of used real estate. Blaylock v. Cary, 709 So.2d 1128, 1130
(Ala. 1997); Ray v. Montgomery, 399 So.2d 230, 233 (Ala. 1980). Thus, in the sale of used real estate, a seller or the seller's agent generally has no duty to disclose to the purchaser any defects in the property. Blaylock, 709 So.2d at 1130; Cato v. Lowder Realty Co., 630 So.2d 378, 382
(Ala. 1993). However, this Court has recognized exceptions to this rule:
 `"Under § 6-5-102, Ala. Code, 1975, the seller has a duty to disclose defects to a buyer if a fiduciary relationship exists between the parties. In addition, if the buyer specifically inquires about a material condition concerning the property, the seller has an obligation to disclose known defects.'
"Commercial Credit Corp. v. Lisenby, 579 So.2d 1291,1294 (Ala. 1991).
 "`Moreover, if the agent (whether of the buyer or of the seller) [or the seller] has knowledge of a material defect or condition that affects health or safety and the defect is not known to or readily observable by the buyer, the agent [or seller] is under a duty to disclose the defect and is liable for damages caused by nondisclosure.'
"Fennell Realty Co. v. Martin, 529 So.2d 1003, 1005
(Ala. 1988). See also Blaylock, 709 So.2d at 1131.
 . . .
 "Where a purchaser's direct inquiry would otherwise impose a duty of truthful disclosure, this Court has held that a purchaser's fraud claim is precluded by language in a sales contract stating that the purchase is `as is.' Leatherwood, Inc. v. Baker, 619 So.2d 1273, 1274 (Ala. 1992); Haygood v. Burl Pounders Realty, Inc., 571 So.2d 1086, 1089
(Ala. 1990); Massey v. Weeks Realty Co., 511 So.2d 171, 173 (Ala. 1987). In Massey, after the purchaser noted damage to some exterior columns, the real estate agent stated that the damage was caused by dry rot and that the damage was inexpensively remedied. The purchaser then signed an `as is' contract for the purchase of the house without having the house inspected for termites. The contract further provided that the realtor did not warrant or guarantee the condition of the property. After he moved into the house, the purchaser found that the house was infested with termites. This Court held that the purchaser `did not have the right to rely on the oral representations of [the agent] made prior to the execution by [the purchaser] of the form containing the "as is" provision and the purchase agreement that provided that the realtor did not warrant or guarantee the condition of the property.' Massey, 511 So.2d at 173.
 "In Haygood, the buyers asked the sellers, themselves real estate agents, if the basement had ever leaked, and the sellers replied, `[N]o, it is well constructed.' There was evidence, however, indicating that the sellers had had repair work performed in the basement because of cracks in the foundation walls that had permitted water to penetrate the basement. The buyers signed an `as is' contract for the purchase of the house. The sales contract also contained a clause that stated:
 "`"Neither the Seller nor the Broker have made or make any other representations *Page 1134 
about the condition of the property and the Purchaser agrees that he has not relied on any other representation. . . ."'
"571 So.2d at 1089. After holding that the Haygoods had not alleged that they had relied on the misrepresentations, this Court concluded that `even if they had made such an allegation, the plaintiffs' signing of the two documents that indicated no reliance would have made the summary judgment . . . proper.'571 So.2d at 1089.
 "In Leatherwood, the purchasers asked a real estate agent to inquire about the foundation of a house they were interested in purchasing. The real estate agent contacted the agent who had previously listed the house, and that agent informed her that the sellers knew of only one crack around the air-conditioning system. The Bakers then signed an `as is' sales contract for the property. After the Bakers moved into the house, they discovered severe problems; the house began to crack in several places. The realty company had documents in its possession that indicated that the house had structural problems. This Court held that the Bakers' signing of an `as is' contract prohibited them from pursuing both their negligence and fraud claims against the realty company. Leatherwood, 619 So.2d at 1274.
 "Chief Justice Hornsby dissented in Leatherwood. He reviewed the law of other states and concluded that `[v]irtually every other state that has addressed the effect of an "as is" provision in a contract for the purchase of used residential real estate has held that the "as is" provision does not insulate a vendor from liability for fraud.' Leatherwood, 619 So.2d at 1276
(Hornsby, C.J., dissenting). After citing numerous cases from other jurisdictions holding that an `as is' clause does not preclude a fraud claim, the dissent stated: `I would abandon the position this Court adopted in Massey, because it distorts the law of this state and permits a vendor to contract away liability for intentional wrongdoing. Instead, I would adopt the position that an "as is" purchase contract does not shield a vendor from liability for fraudulent inducement.' 619 So.2d at 1276.
 "The Moores primarily rely upon Boswell v. Coker, 519 So.2d 493 (Ala. 1987), decided before Leatherwood, for the proposition that a fraud claim is not precluded by `as is' language and contract language stating that no representations were made as to the condition of the property. In Boswell, the purchaser, after
signing the sales contract, complained to the seller's real estate agent about the roof. The seller, a bank, instructed the real estate agent to have the roof inspected. After an inspection, the roofer informed the real estate agent that `comparing the cost of repairing the roof to what it would cost to reroof the house, it would be better to reroof the house entirely.' 519 So.2d at 494. The seller did not want to put a new roof on the house, but instead instructed the real estate agent to have minor repairs made. The buyer was not told that the roofer had stated that, considering the comparative costs, it would be better to reroof the house. The buyer also claimed that the real estate agent stated that the roof was in excellent condition. After moving into the house, the buyer discovered that the roof leaked. This Court — without citing Massey, which had been decided six months earlier — reviewed cases holding that a real estate agent has a duty to speak truthfully when responding to direct inquiries. Without discussing the import on its analysis of the `as is' language, this *Page 1135 
Court reversed the summary judgment in favor of the real estate agent, holding that jury questions existed as to whether the real estate agent's failure to respond completely to the purchaser's questions was a breach of her duty to disclose and whether the purchaser's reliance on the real estate agent's statements was reasonable. Boswell, 519 So.2d at 496. Neither the majority opinion nor the dissent in Leatkerwood cites Boswell;
neither does the opinion in Haygood.
 "We are unable to reconcile Boswell with Leathenvood, Haygood, and Massey. Even if we were sympathetic to Chief Justice Hornsby's argument that an `as is' statement in a contract should not preclude a fraud claim, at least where such a claim is predicated on an affirmative misrepresentation by the seller or seller's agent, the Moores do not ask us to overrule Haygood, Leatherwood, or Massey. In fact, the Moores do not cite any of these three cases, and no party cites Massey. Given the state of the briefs in this appeal, including the fact that the Lundys are acting pro se and that they have not filed a brief with this Court, and the fact that the Moores are a former real estate agent and an insurance adjuster with experience in evaluating water damage to houses, we decline on this occasion to revisit the rule from Haygood and Leathenvood, cases decided after Boswell, holding that `as is' language in a contract for the purchase of used residential real estate precludes a fraud claim. Stare decisis commands, at a minimum, a degree of respect from this Court that makes it disinclined to overrule controlling precedent when it is not invited to do so."
849 So.2d at 923-26.
In the case now before us, the sale of the Casey property to the Stoddards was subject to the doctrine of caveatemptor because the Casey property was used real estate.See Moore. Moreover, even if Mikkelsen and ERA were under a duty to disclose to the Stoddards that the Casey property was zoned for residential use only, the Stoddards signed a purchase contract containing an "as is" clause. Therefore, under the supreme court's holdings inLeatherwood, Inc. v. Baker, 619 So.2d 1273 (Ala. 1992),Haygood v. Burl Pounders Realty, Inc., 571 So.2d 1086
(Ala. 1990), Massey v. Weeks Realty Co., 511 So.2d 171
(Ala. 1987), and Moore, the Stoddards' fraud and suppression claims are barred.
The Stoddards, however, argue that the supreme court's holdings in Boswell v. Coker, 519 So.2d 493 (Ala. 1987), andCruse v. Coldwell Banker/Graben Real Estate, Inc.,667 So.2d 714 (Ala. 1995), indicate that their fraud and suppression claims are not barred. The supreme court acknowledged inMoore that the holding in Boswell was inconsistent with the holdings in Leather-wood,Haygood, and Massey, but it followed the holdings in Leatherwood, Hay-good, and Massey rather than Boswell. The supreme court's holding inCruse is consistent with its holding inBoswell, although the supreme court did not citeBoswell in Cruse. However, the supreme court, in Moore, which was decided after Cruse, followed Leathenvood, Haygood, and Massey
without citing Cruse. Likewise, in Clay KilgoreConstruction, Inc. v. Buchalter/Grant, L.L.C.,949 So.2d 893 (Ala. 2006), the supreme court stated:
 "Under a growing body of Alabama caselaw involving circumstances in which the rule of caveat emptor is applicable, a fraud or fraudulent-suppression claim is foreclosed by a clause in a purchase contract providing that the purchaser of real property accepts the property `as is.' Moore v. Prudential Residential *Page 1136 Servs. [Ltd. P'ship], 849 So.2d [914]at 923 [(Ala. 2002)]; Leatherwood, Inc. v. Baker, 619 So.2d 1273, 1274 (Ala. 1992); Haygood v. Burl Pounders Realty Co., 571 So.2d 1086, 1089
(Ala. 1990); and Massey v. Weeks Realty Co., 511 So.2d 171 (Ala. 1987). This is so, because an `as is' clause negates the element of reliance essential to any claim of fraud and/or fraudulent suppression. Hay-good, 571 So.2d at 1089; Massey, 511 So.2d at 173; and Gaulden v. Mitchell, 849 So.2d 192, 199 (Ala.Civ.App. 2002).
 "Kilgore does not cite any of those cases, and it does not ask us to overrule that line of authority. Even if we would be amenable to such a request, we are not inclined to abandon precedent without a specific invitation to do so. `Stare decisis commands, at a minimum, a degree of respect from this Court that makes it disinclined to overrule controlling precedent when it is not invited to do so.' Moore, 849 So.2d at 926."
949 So.2d at 897-98 (emphasis omitted). The supreme court did not cite either Boswell or Cruse in ClayKilgore Construction.
Thus, two different lines of supreme court precedent exist regarding the effect of an "as is" clause on a purchaser's fraud and suppression claims; however, the supreme court's two most recent decisions on this issue, Moore andClay Kilgore Construction, have followed the line of precedent holding that an "as is" clause bars a purchaser's fraud and suppression claims rather than the line of precedent holding that it does not bar such claims.
In the case now before us, the trial court explained its rationale for rejecting Mikkelsen and ERA's argument that the Stoddards' claims were barred by the doctrine of caveatemptor as follows:
 "Now, normally I believe that caveat emptor would apply in a case like this; however — and I want to explain this very carefully for the record because I want the appellate court to understand why I am denying the charges on caveat emptor.
 "In all of the cases that were presented to me, none of them factually quite fit the facts in this case; that is, this was a case where a direct representation was made. The Plaintiffs relied on that direct representation.
 Subsequently, based on the testimony, the Defendants learned that that representation was untrue and did not correct the representation.
 "Therefore, the court holds that caveat emptor does not apply in this very narrow circumstance. So that's my ruling on that."
In other words, the trial court reasoned that Mikkelsen's failure to correct his representation that the Casey property was zoned for commercial use after he had learned that it was, in fact, zoned only for residential use was tantamount to intentional fraud and that Moore, Leatherwood,Haygood, and Massey did not involve intentional fraud. However, the rationale for the rule that an "as is" sales contract bars a purchaser's fraud claims is that the "as is" clause "negates the element of reliance essential toany claim of fraud and/or fraudulent suppression."Clay Kilgore Constr., 949 So.2d at 898 (emphasis added). Therefore, the rule that an "as is" clause bars a purchaser's fraud claims is just as applicable to a claim of intentional fraud as it is to a claim of fraud committed by mistake.
The Stoddards also attempt to distinguish Clay KilgoreConstruction, Moore, Leatherwood, Haygood, andMassey from the case now before us on the basis that those cases involved fraud or suppression relating to the physical condition of property *Page 1137 
rather than the zoning status of property. Although it is true that the fraud and suppression involved in ClayKilgore Construction, Moore, Leatherwood, Hay-good, andMassey related to the physical condition of property rather than the zoning status of property, the Stoddards have not cited any language in the opinions in those cases or any other legal authority standing for the proposition that an "as is" clause does not apply to the zoning status of property.
The Stoddards also argue that language in Zekoff v.Franklin, 380 So.2d 869 (Ala.Civ.App. 1979), and DeWittv. Long, 519 So.2d 1363 (Ala.Civ.App. 1987), indicates that an "as is" clause does not bar fraud and suppression claims relating to the zoning status of property. However, this argument has no merit because neither Zekoff norDeWitt involved an "as is" clause.
The Stoddards also argue that Clay Kilgore Construction,Moore, Leatherwood, Haygood, and Massey are distinguishable from the case now before us because, the Stoddards say, the purchasers in those cases could have discovered the defects in the physical condition of the property whereas, in the case now before us, the Stoddards could not have discovered that the Casey property was zoned only for residential use because the zoning map available to the public indicated that the Casey property was zoned for commercial use. However, the fact that, on November 2, 2002, Dr. Stoddard learned from the zoning administrator that the Casey property was zoned only for residential use refutes the Stoddards' contention that they could not have discovered that the Casey property was zoned only for residential use.
Finally, we note that, in Leatherwood, the supreme court held that the purchasers' signing an "as is" sales contract to purchase used real estate barred not only the purchasers' fraud claim but also their negligence claim. Accordingly, we conclude that the holdings of the supreme court in Leatherwood, Haygood, Massey, Moore, and ClayKilgore Construction govern the case now before us; that, pursuant to those holdings, the Stoddards' signing an "as is" sales contract to purchase used real estate barred all the Stoddards' claims; and, therefore, that the trial court erred in denying Mikkelsen and ERA's motion for a JML. Accordingly, we reverse the trial court's judgment and remand the case to the trial court with instructions to enter a judgment in favor of Mikkelsen and ERA. Because our resolution of the issue raised by Mikkelsen and ERA's first argument disposes of the appeal, we pretermit discussion of their other arguments.
OPINION OF JUNE 29, 2007, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION FOR REHEARING OVERRULED; REVERSED AND REMANDED WITH INSTRUCTIONS.
PITTMAN, J., concurs in the result, with writing, which MOORE, J., joins.
THOMAS, J., concurs in the result, without writing.
THOMPSON, P.J., dissents, with writing.